# Moore *et al.* v. Tate *et al.*

*Bill in Equity to enjoin Action of Ejectment, and to reform Written Instrument.*

1. *Remainder; necessary averments of a bill to enjoin ejectment and to*

*reform a written instrument.*—Where lands are conveyed to one for life with remainder to grantee's "child, children or lawful issue," and in case grantee leaves no "child, children or lawful issue," the lands are to revert back to grantor "and his right heirs," the fact that after the grantor's death his heirs executed a conveyance to the grantee, reciting their relinquishment for a specified consideration of all interest and claim to the lands conveyed in said deed, does not affect the remainder to the said grantee's "child, children or lawful issue;" and to entitle complainants, claiming under mesne conveyances from the grantee, to an injunction against ejectment by grantor's heirs and to the reformation of the agreement of relinquishment, there must be both averment in the bill and proof that the said grantee died without "child, children or lawful issue."

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on February 25, 1890, by the appellees against the appellants ; and prayed for an injunction restraining the defendants from the prosecution of an ejectment suit against the complainants, and for the reformation of a written agreement entered into between H. W. McVay and the heirs of Hugh McVay, deceased.

The agreement which was entered into between H. W. McVay and the other heirs of Hugh McVay, deceased, on October 29, 1851, after reciting the execution of a deed from Hugh McVay to said H. W. McVay, by which certain slaves were conveyed, and also the execution of the deed made in 1850, by which the said Hugh McVay conveyed the lands in controversy to H. W. McVay, and that a disagreement had arisen between the other heirs and H. W. McVay, proceeded as follows : "Now, for the purpose of settling and quieting all doubts, disputes and contentions in regard to said Henry W. McVay's interest in said Hugh's estate and setting apart his said interest, all of the above named parties, except Henry W. McVay, in consideration of the premises and for the consideration hereinafter mentioned, moving to them collectively and not severally from the said Henry W. McVay, hereby relinquish and quit-claim to the said Henry W. McVay, now and forever to all such real estate, right, title and interest as the said Henry W. McVay hath and takes in and to the land and negroes mentioned in the two deeds of gift hereinbefore referred to by virtue of said deeds." This agreement then re-

[Moore *et al.* v. Tate *et al.*]

cited the consideration coming from H. W. McVay to the other heirs. The controversy in this case arose upon the proper construction of this clause of the said agreement, and from its proper construction is to be determined the rights of the parties litigant. The other material facts of the case are sufficiently stated in the opinion.

. On the submission of the cause, on the pleadings and proof, the chancellor granted the relief prayed for. The defendants prosecute the present appeal, and assign this final decree of the chancellor as error.

SIMPSON & JONES, for appellants.

. J. B. MOORE and R. O. PICKETT, *contra.*

STONE, C. J.—In May, 1850, Hugh McVay conveyed the lands in controversy in this cause to his son, H. W. McVay, according to the recitals of the deed, "for and during the term of his natural life without impeachment for waste, and from and after the determination of the estate of the said Henry W. McVay then to the lawfully begotten child, children or lawful issue of the said Henry W. McVay, and in case the said Henry W. McVay shall leave no child or children or lawful issue, then the reversion of the said tract of land to return to the said Hugh McVay and his right heirs."

After the death of Hugh McVay and while his estate was being administered, viz., in 1851, a difference arose between his heirs as to the interest of H. W. McVay in the estate. The other heirs thought H. W. McVay had overreached his father in procuring both the conveyance above referred to, and, also, another conveyance of certain slaves, and were contemplating an attack upon such conveyances. As a result of these differences and in settlement of the same, a written agreement was entered into by all the parties, by which it was attempted to declare and determine the interest of H. W. McVay in the lands embraced in the above mentioned deed and in the general estate. Shortly after this agreement was made H. W. McVay sold the said lands to one Todd; the deed purporting to carry the fee. By successive conveyances the lands passed to appellees, who are the complainants in the bill. Appellants, who are the children of one of

[Moore *et al.* v. Tate *et al.*]

the deceased heirs at law of Hugh McVay, brought ejectment against appellees to recover the land, who thereupon filed the bill in this cause to enjoin the ejectment
proceeding, and also to reform the written agreement
entered into between H. W. McVay and the other heirs
at law of Hugh McVay, deceased.

It is claimed in the bill that the written agreement
was intended by all the parties thereto to vest in H. W.
McVay a fee simple title to the lands in which he had
only a life estate under the deed made to him by his
father.   It is claimed by appellants that the written
agreement, in so far as it referred to the lands in controversy, was intended simply to confirm in H. W. McVay
the life estate acquired by him under the deed from his
father.   Parol testimony was resorted to on both sides
to aid in the interpretation of the written agreement,
and the construction of that instrument is the real purpose of the bill as well as of this appeal.   The decree of
the chancery court sustains the construction contended
for by appellees, viz., that the written agreement vested
the entire reversionary interest in said property in H.
W. McVay, and which, with his life estate, made up the
fee in the land.   The decree accordingly perpetuates the
temporary injunction issued on the filing of the bill to
restrain appellants from maintaining the action of ejectment.

Where a title is questioned after having remained undisturbed, if not acquiesed in, so long as this seems to
have been, we would be disposed to determine the matter in dispute without making any critical inquiry as to
the mere form in which the question comes before us,
and especially so where it is elaborately argued by counsel, as is the case here, without any objection on that
ground.   But here it is not simply a matter of form.
The condition of the record is such that whatever we
might have to say on the substantial matter sought to
be presented by the pleadings and which is argued by
counsel, would not only be unauthorized by the record,
but, perhaps, the anticipation of a question which may
never arise.

We have shown above that the deed from Hugh McVay
to his son, H. W. McVay, conveyed the property in controversy to the latter for the term of his natural life with
remainder to the child, children, or issue of the said

Henry W., and in default of such child, children or issue, then to revert to the said Hugh McVay or his heirs. We have searched the record in vain for either averment or proof that H. W. McVay died without leaving a child, children or issue. His death is shown, but that is all.

The written agreement between the heirs at law of Hugh McVay, on which appellees rely, did not have the effect of eliminating from the deed of Hugh McVay to H. W. McVay the remainder created by the deed in favor of the child, children or issue of H. W. McVay. Such remainder continued wholly unaffected by the agreement. Yielding to the agreement all the effect claimed for it in the bill of complaint, it simply superadded to the life estate, already invested in H. W. McVay, the reversionary interest of the heirs signing the agreement, but leaving such reversionary interest subject to be defeated by the remainder created by the deed in favor of any child, children or issue of the said H. W. McVay. When, therefore, H. W. McVay sold the land to Todd his deed carried only such title as he himself had, viz., a life estate interest coupled with the reversionary interest of Hugh McVay's heirs; the latter interest subject to be defeated by the death of H. W. McVay leaving a child, children or issue, and such is the title passing through successive vendees to appellees. So far as appears to the contrary from this record the entire fee in the property here in controversy passed, upon the death of H. W. McVay, into his child, children or issue.

Without averment and proof that H. W. McVay died leaving neither child, children nor issue, appellees fail to show that they have any interest in the property which would entitle them to come into a court of equity to have said written agreement reformed, and also fail to show any ground or necessity for coming into equity to enjoin the ejectment suit.

It results that the decree of the chancery court must be reversed and the cause remanded.

Reversed and remanded.