# Comer *v.* Bankhead.

*Bill in Equity against Warden of State Penitentiary, for Specific Performance of Contract for Hire of Convicts.*

| 70 | 493 |
| 98 | 133 |
| 70 | 493 |
| 121 | 625 |
| 70 | 493 |
| 125 | 173 |
| 70 | 493 |
| 128 | 608 |
| 70 | 493 |
| 138 | 484 |
| 70 | 493 |
| 141 | 586 |
| 70 | 493 |
| 143 | 583 |

1. *Contract of warden of penitentiary for hire of convicts.*—The State acquires an ownership in the services of convicts sentenced to imprisonment in the penitentiary, and the warden of the penitentiary is merely an agent and officer of the State, having the custody of the convicts, but no personal interest or property in them or their services; and a contract made by him in his official capacity, and approved by the governor officially, for the hire of the convicts as authorized by law, is the contract of the State, and not of the warden himself, especially where it contains an express stipulation exempting him from all personal liability for damages.

2. *Contract of agent; on whom binding.*—It is generally true, that where a party plainly appears, upon the face of an agreement, to be acting as the agent of another, the contract is binding solely on the principal, unless the agent superadds his own responsibility by special stipulation.

3. *Specific performance of contract; on what ground decreed, and against whom.*—The specific performance of a contract is decreed in lieu of damages, when an award of damages at law would not afford adequate compensation; and the general rule is, that if an action at law will not lie on a contract, to recover damages for its breach, a court of equity will not decree a specific performance; nor will it be decreed against an agent, who has no pecuniary interest in the contract, and whose agency is disclosed on the face of the contract.

4. *Same, against warden of penitentiary.*—A contract for the hire of convicts, made by the warden of the penitentiary in his official capacity, approved by the governor officially, and containing an express stipulation exempting the warden from personal liability for damages, will not be specifically enforced against his successor in office: such a suit is essentially a suit against the State, which can not be sued in its own courts without its consent. [BRICKELL, C. J., *dissenting.*)

APPEAL from the Chancery Court of Elmore.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 6th June, 1881, by John W. Comer, against John H. Bankhead, the warden of the State penitentiary, and the successor in office of John G. Bass, former warden, and sought to specifically enforce a written contract between the said Comer and Bass, entered into and dated the 22d December, 1880, and approved by the governor in his official capacity; and to enjoin the defendant, as warden, from hiring or delivering convicts to any other person, and especially to one Thornton, in alleged violation of the complainant's contract with Bass. The contract was made an exhibit to the bill, but it is unnecessary to state its provisions.

[Comer v. Bankhead.]

An injunction was granted, on the filing of the bill, by Hon. WM. S. MUDD, of the sixth judicial circuit. The defendant filed an answer to the bill under oath, incorporating in it a demurrer for want of equity; one of the grounds of demurrer specially assigned being, "that this is really a suit against the State, and under the laws no such suit can be maintained." After filing his answer, the defendant submitted a motion to dissolve the injunction, both for want of equity in the bill, and on the ground that its material allegations were denied by the answer. The chancellor sustained the motion, on the latter ground, and dissolved the injunction; and his decree is now assigned as error.

RICE & WILEY, and CLOPTON & HERBERT, for appellant.

TROY & TOMPKINS, and WATTS & SONS, contra.

SOMERVILLE, J.—On December 22, 1880, John G. Bass, warden of the Alabama State Penitentiary, executed a written contract with the appellant, Comer, in which he agreed, "as such warden, and by virtue of authority vested in him by law," to hire out and deliver to appellant, under such contract of hiring, certain convicts sentenced to imprisonment in said penitentiary. This contract, with its various stipulations and conditions, not necessary to be here mentioned, was duly approved by the Governor of the State, in his official capacity, as authorized by law. Bass continued to be warden until on or about March 4th, 1881, when the appellee, Bankhead, was appointed to be his successor in office. Bankhead refused to execute the provisions of this agreement, as interpreted by the appellant, and made a contract with one Thornton, by which he agreed to deliver to him a larger number of the convicts, to whose services Comer claimed to be entitled under this contract with Bass. It is specially stipulated, that "no damage shall accrue under this contract against John G. Bass, or his successor in office;" and it is signed "John G. Bass, warden Alabama Penitentiary."

The bill filed in the cause by Comer prays for the specific execution of the contract made with Bass, against Bankhead, and for an injunction preventing the delivery of any of the convicts to Thornton, or any other person, during the term of five years in which the contract was to remain of force. The relief sought is, among other reasons, placed upon the equities of part performance and irreparable damage. The case comes to this court on an appeal from the decree of the chancellor, dissolving the preliminary injunction, which had been granted in accordance with the prayer of the bill.

Involuntary servitude, as a punishment for crime, whereof the party shall have been duly convicted, is authorized by both the constitution of the United States, and that of this State. U. S. Const., Art. 13, § 1; Const. Ala., 1875, Art. 1, § 33. The State thus acquires an ownership in the services of all persons convicted of crime, and duly sentenced therefor to confinement in the penitentiary, which, guarded by certain humanitarian principles, is treated and protected as a valuable property.

The warden of the State penitentiary is an agent of the State, and an officer thereof, and is the mere custodian of the convicts. He has personally no estate, interest or property in them, or their services, whatever. This is quite manifest from the authority given, and the duties imposed on him by law. He is appointed by the Governor, with the consent of the Senate, and holds his office for the term of four years, and until his successor is appointed.—Code of 1876, § 4534. He is required to give bond, and to take an oath of office, and he receives compensation by way of a salary alone, for his services rendered to the State.—§§ 4535, 4553, 4554. He "has the charge and custody of the penitentiary, and the convicts therein," and other specified property of the State, and has the power to hire out such convicts for a term not longer than five years, by the consent and approval of the Governor.—§ 4536. He is required, among other designated duties, to "have general supervising charge over all convicts employed without the prison walls," and to "deposit in the State treasury all moneys in his hands after defraying the current expenses of the institution," being subject to such rules and regulations, in the discharge of his duties, as may be established by the board of inspectors.

It necessarily follows, that a contract made by the warden, under these provisions of the Code, and executed on the face of it in his official capacity as warden, within the scope of his lawful authority, is the contract of the State. He is the mere *agent*, and the State is the *principal*. The other contracting party is conclusively presumed to know the law under which he acts, and the principal whom he represents. And this is made the clearer, where, as here, there is a stipulation exempting the agent from all personal liability for damages on the contract. In fact, it is a plain maxim of the law, that "the vital principle of the law of agency lies in the *legal identity* of the agent and the principal," created by contract or by law, as the case may be.—1 Greenl. Ev. § 59. Even where a contract is made by an agent in his own name, if the principal subsequently recognizes and ratifies it, and it is in part performed, equity regards it as the contract of the principal.—*John v. Griffith*, 13 How. (N. Y.) 59. And this principle is stronger in its application to public agents and officers of government. "As a rule," says Mr.

[Comer v. Bankhead.]

Wharton, "a promise to a public officer is to be enforced by a suit in the name of the body he represents. This results from the principle just announced, the officer being a purely indifferent person in the contract, and the principal being the only real party in interest."—Whart. Agency & Agents, § 445. And generally it is true, that where a party plainly appears, upon the face of an agreement, to be acting as the agent of another, the contract is binding solely on the principal, unless the agent superadds his own responsibility by special stipulations. *Roney's Adm'r v. Winter*, 37 Ala. 278 ; *Key v. Parnham*, 6 Har. & Johns. 418. The contract in question could, accordingly, have been enforced only in the name of the State as a proper party plaintiff, and the State alone, if suable, could be responsible in damages for any violation of its provisions or stipulations authorized by legislative authority.

Specific performance has been defined to be the actual accomplishment of a contract by the party bound to fulfil it.—2 Bouv. Dict. 538. The original and sole equity of the jurisdiction is, that an award of damages at law will not afford adequate compensation to the injured party.—Lead. Cas. Eq. (4th Amer. ed.) 1093. It is decreed in lieu of damages; and the general rule is, that if an action at law will not lie on a contract, to recover damages for its breach, equity will decline to decree its specific performance, or execution.—*Hickman v. Grimes* (1 A. K. Marshall, 86), 10 Amer. Dec. 714. An agent, therefore, who has no pecuniary benefit in a contract, and who discloses his agency on the face of the instrument expressing it, is not a proper sole party defendant in a bill filed for specific performance. This principle was decided in *Nurse v. Seymour et al.* 13 Beav. 254, where a bill of this kind was filed by a complainant against certain officers or agents of the British government, styled " commissioners of woods and forests," to compel specific execution of a contract entered into by them, under the authority of an act of Parliament relating to an estate in the crown. The bill was held bad on demurrer.—Fry on Specific Perf. pp. 126–127 ; Waterman on Specific Perf. § 92.

This suit, however, is not an action against Bankhead personally, nor does it purport to be such. He never executed the contract, and personally he has no privity or connection with it. It was executed, or entered into, by his predecessor in office, Bass. Bankhead is, therefore, sued in this case officially, as the warden of the State Penitentiary, and as an officer and agent of the State of Alabama. Where this is the case, the suit is essentially and by indirection an action against the State. It was so held by the Supreme Court of the United States, in *The Governor of Georgia v. Madrazo*, 1 Pet. 110, 123, where a libel was filed in the Circuit Court of the United States, ex-

[Comer v. Bankhead.]

hibiting a claim to certain money and slaves in the custody of the officers of the State of Georgia. Chief-Justice MARSHALL, delivering the opinion of the court, said: "The claim upon the governor, is as governor; he is sued not by his name, but by his title. The demand made upon him is not made personally, but officially. The decree is pronounced, not against the person, but the officer, and appeared to have been pronounced against the successor of the original defendant. . . . . . In such a case, where the chief magistrate of a State is sued, not by his name, but by his style of office, and the claim made upon him is entirely in his official character, we think *the State itself may be considered a party to the record.* If the State is not a party, there is no party against whom a decree can be made. No person in his natural capacity is brought before the court as defendant."

This same view is held in *McCauley v. Kellogg et al.*, 2 Woods' U. S. Cir. Ct. Rep. 22, and the principle announced, that an action instituted against executive officers of a State, in their official capacity, to compel them to execute a contract of the State, authorized by its law, is, to all intents and purposes, an action against the State, and, as such, is violative of the Federal Constitution. In that case, WOODS, Circuit Judge, discusses the cases of *Osborn v. The Bank of the United States,* 9 Wheat. 738, and *Davis v. Gray,* 16 Wall. 203, which are cited and relied on by appellant's counsel in this cause, and shows that they establish no principle contravening the views expressed in *McCauley v. Kellogg et al.* See, also, *Tracy v. Hornbuckle,* 8 Bush, (Ky.) 336. A somewhat similar principle was settled in *People v. Ambrecht,* 11 Abbott's (N. Y.) Prac. Rep. 97 (104). This was an action of ejectment against an agent of the Federal government, who was in possession of a tract of land in the State of New York, which was claimed by the United States, under a grant from the State, for the purpose of a military post and fortification. After declaring the principle, that the United States were not suable, except in such cases as were authorized by act of Congress, the court say: "Ejectment could not therefore be brought against the United States, any more than an action of *assumpsit;* and it seems to follow, that they *can not be indirectly sued in the persons of their agents and officers,* and the title and claim thus subjected by indirection to the jurisdiction of the State courts."

Under this view of the case, the bill was not maintainable, the universal rule being, that no State can be sued in its own courts, without its own consent; this being an attribute, or privilege of sovereignty, and being now embodied in the State Constitution, as section 15 of the Declaration of Rights, providing that "the State of Alabama shall never be made defend-

32

[Comer v. Bankhead.]

ant in any court of law or equity."—*Langford v. United States*, 101 U. S. 341; *Divine v. Harvey*, 18 Amer. Dec., *note*, p. 200.

The bill being without equity, there was no error in dissolving the injunction, even though done on other grounds, and the decree of the chancellor is affirmed.

STONE, J.—I fully concur in the argument and opinion of my brother SOMERVILLE, which he has fortified with such an array of authorities. Although negotiated by the warden of the penitentiary, Comer's contract did not become binding, until it was approved by the Governor; and then it became the contract of the State, not of the warden. The consideration proceeds from the State, and the promise of Comer to pay hires enures to the State. The money, when paid by him, is the property of the State. If Comer were to violate his contract, any suit for its breach would be in the name of the State. Bass, in negotiating the contract, did not transcend his authority, at least, for one year. He did what the law constituted him an agent to do; and when his act received the ratification and sanction of the Governor, it became a contract; not the contract of himself, but of the State, whose authority he had for making it, and which authority he did not transcend, to the extent of one year's hiring, at least. It would be a novel doctrine, if we were to hold that an agent, disclosing his principal, contracting in the princpal's name, and within the scope of authority conferred on the agent, failed to bind his principal, or imposed any liability on himself. In such case, the agent is the mere instrument of the princpal—is dwarfed out of sight; and the contract is that of the principal, and may be declared on as made by him. *Qui facit per alium, facit per se.* We apprehend, if the right to sue the State had not been taken away by the constitution, no one would seek to enforce this contract, or have it specifically performed, without making the State a party. It would seem, on principle, that in a suit against the agent alone, no relief can be obtained which has the effect of compelling the principal to perform its contract. If the complainant have any remedy, it is not against the State, nor by bill for specific performance of the contract.

BRICKELL, C. J., dissenting.
VOL. LXX.