# Kent *et al. v.* Dean.

*Bill in Equity for Specific Performance of Contract and to enforce Trust.*

1. *Equity jurisdiction; specific performance of contract.*—If a contract is such as that an action at law will not lie to recover damages for its breach, a court of equity will decline to enforce its specific performance or execution.

2. *Equity jurisdiction; sufficiency of prayer.*—Where a bill is filed which sets up a contract, which is insufficient to authorize its specific performance, but the facts averred in the bill show that the complainant is entitled to have a trust enforced in reference to the lands which the contract related to, and that the defendant held said lands as a trustee *ex maleficio*, the prayer of such bill, that upon the final hearing the chancellor would "enter a decree investing in this complainant the title to the land * * * enforcing the specific performance of the contract as set out in the bill, and for such other, further or different relief as the facts may warrant or equity demand," is sufficiently comprehensive to have a trust declared in favor of the complainant against the defendant as the repository of the title of complainant to the said land, and to require the defendant to convey the same to the complainant

3. *Trusts and trustee; a person occupying a position of trust can not take advantage of it to acquire hostile interest.*—Whenever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or with him, in any subject of property or business, he is prohibited from acquiring rights in that subject, antagonistic to the person with whose interest he has become associated.

4. *Same; when trust created.*—Where two persons purchase separate tracts of land from the same vendor and enter into possession of the respective tracts, and, subsequently, by mutual agreement between the purchasers and the vendor, the land is sold under an order of the court, and it is agreed that one of such purchasers shall bid in the land and then make a conveyance to the other purchaser of the land formerly purchased by the latter; if, upon such sale under the order of the court, the person designated to bid in the land does so, and upon demand of the other purchaser refuses to make the conveyance, he can be compelled to do so by bill in equity to enforce the trust; he holding such land as trustee *ex maleficio* or *ex delicto*.

5. *Mortgage; bona fide purchaser; notice implied from possession.* Where a mortgage is given upon land, a portion of which, at the time of the execution of the mortgage, is in the actual possession of a party other than the mortgagor, and the person so in possession is claiming said lands as his own, and exercising such acts of ownership over it of which the land is susceptible, such claim and possession is sufficient to put the mortgagee on inquiry and charge him with notice, and defeats his claim as a *bona fide* purchaser.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed June 4, 1897, by the appellee, L. B. Dean, against the appellant, J. G. Kent, Adeline Hill, individually, and as guardian of Frank J. Knight and Julia Knight and S. A. Vest and J. W. Vest.

The prayer of the bill was that upon final hearing the chancellor would render a decree investing in the complainant the title to the land purchased from Adeline Hill, enforcing the specific performance of the contract set out in the bill, and for such other, further,

additional and different relief as the facts of the case may warrant, or equity demand.

The facts of the case, as shown by the evidence, are as follows: Mrs. Knight, a widow, and her two minor children, occupied forty acres of land which was their homestead. The property was owned by S. J. Knight, the husband of Mrs. Knight and the father of her minor children. This appears to have been all the property they owned, and was not sufficient for their maintenance. Soon after the death of Mr. Knight, for the purpose of support, Mrs. Knight sold and conveyed ten acres of the forty to the complainant, Dean, who went into the possession of the same, as is averred in the bill, and, as the evidence tends to show, has since, been in the possession thereof, using it as his own, by such acts of ownership as the property was susceptible of,—such as paying taxes upon it, cutting timber from it and claiming it as his property. Later, Mrs. Knight sold to one Story eleven acres of the remainder of the tract, who, after paying a portion of the purchase money, sold his interest to the defendant, Kent, to whom Mrs. Knight made conveyance, thus leaving nineteen acres of the original tract unsold and in the possession of Mrs. Knight and her children. This part of the land contained the house and improvements and the cultivable land.

After this Mrs. Knight married Mack Hill, and was appointed guardian of her minor children. She then, as such guardian, executed other conveyances to the ten and eleven acres to the complainant and defendant respectively. The defendant, Kent, desired to purchase from Mrs. Hill the remaining nineteen acres of said tract, but desired to have a title from Mrs. Hill under orders of the court. Both complainant and defendant became dissatisfied with their respective titles to the ten and eleven acres they had theretofore purchased. It occurred to them and to Mrs. Hill that she could apply to the probate court for an order to sell the said nineteen acres, and in making application for its sale she might include the said ten and eleven acres, making the application for the sale of the entire

[Kent *et al.* v. Dean.]

forty acres; and it was accordingly agreed that this course should be pursued, and when the order of sale was procured, and the sale came on to be made, defendant would bid $235 for the land, and if any one should bid more than that sum, defendant, Knight, was to bid in the property notwithstanding, and Mrs. Hill would settle with him at $235; and it was also understood that this amount was for the purchase money of the nineteen acres alone, and not for the ten and eleven acres she had heretofore sold to complainant and defendant, or for any part thereof, and that, as soon as defendant had thus obtained a court title to the whole forty acre tract, he would make a deed to complainant to the ten acres he had bought from and paid Mrs. Hill for, leaving defendant with a good title to the remaining thirty acres of the tract. It appears that $235 was a fair price for the nineteen acres. There was also an understanding, as appears, that the costs of procuring the court title should come out of the $235, and it was so paid; but complainant agreed to pay the cost of the execution of the deed from defendant to him, which, as the evidence tends to show, he did pay to him.

After the purchase by defendant Knight, and he received his deed from Mrs. Hill under the orders of court, on demand of complainant for the promised deed, he refused to execute the same and claimed title to the entire forty acres.

The complainant did not attend the sale, but the defendant by agreement did, and made purchase according to his said agreement with Mrs. Hill and complainant, who relied on him to do so, and to carry out the same.

The chancellor rendered a decree in favor of complainant, and defendant appeals.

The contention of complainant is that the bill may be treated either as a bill to enforce a specific performance of the contract, or as a bill to declare and enforce a resulting trust, whereby defendant shall be decreed to hold the title to complainant's ten acres of land in trust for him, and that he be ordered to execute a deed therefor.

S. A. and J. W. Vest were made parties defendant, on the allegations that in June, 1894, Kent and wife executed to S. A. Vest their note for $152.18, and their mortgage on the Hill lands embracing Dean's ten acres to secure the same; that this note and mortgage were afterwards assigned by S. A. to J. W. Vest, who claimed to own the same; that S. A. Vest knew of the rights and equities of complainant in and to said land, and that in April, 1895, Kent and wife executed their note to J. W. Vest for $160.25, and on that day, to secure its payment, executed their mortgage on said lands, embracing this 10 acres of Dean, and this debt was the same one for which the original mortgage by defendant was given to said S. A. Vest.

The Vests deny knowledege of Dean's equity at the time the last mortgage was given, and J. W. Vest avers that his mortgage from Kent and wife, was *bona fida* for a valuable consideration, without knowledge or information of complainant's claim to or interest in said 10 acres of land. J. W. Vest prayed that his answer be taken as a cross-bill, making Dean, Kent and wife parties, and praying that the same be foreclosed.

It appears that S. A. Vest and one Jaggers became the sureties of Kent on the purchase money notes of the latter for the said land under its sale by the order of the court; that long afterwards, when these notes became due, S. A. Vest paid them, and took a mortgage from Kent and wife on the Hill lands, including Dean's 10 acres, to secure the repayment of the sum paid by him. This note and mortgage were afterwards transferred by S. A. to J. W. Vest, and a new note and mortgage were executed by Kent and wife to him, to secure the debt of the original mortgage to S. A. Vest. The evidence tends to show that S. A. Vest, at the time he took his mortgage from Kent and wife, knew of complainant's rights and equities, but it is wanting to show that J. W. Vest had actual knowledge or information of them, when he acquired his mortgage.

On the final submission of the cause upon the pleadings and proof, the chancellor on the submission of the cross-bill decreed a foreclosure of the defendant's mort-

gage to J. W. Vest, on all the lands embraced in it, except Dean's 10 acres, and ordered its sale, unless the debt it secured was paid by a day named. He also decreed that complainant was entitled to relief, and ordered Kent to execute and deliver to Dean, at Dean's expense, a deed to the 10 acres bought by Dean from Mrs. Knight. From this decree the defendants John G. Kent and J. W. Vest appeal, and assign the rendition thereof as error.

W. R. FRANCIS, for appellants.—It being clearly shown that this alleged agreement was not in writing, it follows that a specific performance of the alleged contract, unless the purchase money or a portion thereof was paid by Dean to Kent, and Dean put in possession of the land by Kent, both the payment of the purchase money or a portion thereof and putting of the purchaser in possession by the vendor must concur. If either condition of the statute is not complied with the contract is not binding, and a specific performance can not be enforced.—*Stringfellow v. Ivey,* 73 Ala. 209; *Hughes v. Hatchett,* 55 Ala. 539; *Sanders v. Robertson,* 57 Ala. 465; *Heflin v. Milton,* 69 Ala. 354; *Phillips v. Adams,* 70 Ala. 373; *Bolling v. Munchus,* 65 Ala. 558; *Foster v. Napier,* 74 Aa. 393; *Alba v. Strong,* 98 Ala. 163; *Pike v. Pettus,* 71 Ala. 98; *L. & N. R. R. Co. v. Philyaw,* 94 Ala. 463; *Powell v. Highley,* 90 Ala. 103; *Nelson v. Shelby Mfg. Co.,* 96 Ala. 515; *Garner v. Alman,* 99 Ala. 218.

The cross complainant stands as an innocent purchaser without notice, and is entitled to have the mortgage foreclosed as to the whole of said forty acres, without any exception therefrom.—*Steiner v. Clisby,* 95 Ala. 91.

The only remedy Dean had, if any at all, was an action at law against Mrs. Hill for the money he had paid her for the land.—*Nelson v. Shelby M. & I. Co.,* 96 Ala. 575.

ARTHUR L. BROWN, *contra.*—This contract should be enforced according to its terms, notwithstanding it rested in parol. "A court of equity will decree the

specific execution of a parol agreement to sell or convey lands, notwithstanding the statute of frauds, when there has been such part performance that it will be a fraud on the party claiming a specific execution, to refuse it."—*Brewer v. Brewer & Logan*, 19 Ala. 481; *Morgan v. Morgan*, 3 Stew. 383; *Hays v. Hall*, 4 Port. 374; *McMorris v. Crawford*, 15 Ala. 271. A resulting trust arises in favor of one who pays the purchase money for land, the tite to which is taken in trust, and such trust may be established by parol.—*Galbraith v. Galbraith*, 42 Ala. 683. An agreement to make final payment on land for the vendee, and take the title, and on repayment by him of said sum, with interest and expenses, to convey to him, is enforceable in equity, though not in writing.—*Hodges, Amr., etc., v. Verner*, 100 Ala. 612; *Jordan et al. v. Garner*, 101 Ala. 411; *Olds v. Marshall*, 93 Ala. 138; *Bates v. Kelly*, 80 Ala. 142.

At the time Dean made the agreement with Kent, and paid him, Dean was already in possession of the premises, and has remained in possession continuously since that time,—he has never been ousted. These facts are sufficient to take the contract out of the operation of the statute of frauds.—*Frank & Muth v. Riggs*, 93 Ala. 252; *McMahan v. Jacoway*, 105 Ala. 585; *L. & N. Ry. Co. v. Philyaw*, 94 Ala. 463; *Arrington v. Porter*, 47 Ala. 714; *Casey v. Holmes*, 10 Ala. 776.

"Persons acquiring title by fraud are trustees for the injured party."—*Coleman v. Cocke*, 18 Am. Dec. 757; *Thompson's Lessee v. White*, 1 Am. Dec. 257. "A court of equity will not permit the statute of frauds, which was designed to prevent fraud, to be used as an instrument for perpetrating a fraud with impunity." *Sherman v. Scott*, 27 Hun. 338. "A party will not be permitted to insist upon the statute of frauds to protect himself in the enjoyment of advantages procured from another in faith of the oral agreement on which the latter has acted, and in faith thereof has placed himself in a situation in which he must suffer wrong and injustice."—*Dodge v. Wellman*, 42 Howard 431; *Levy v. Brush*, 45 N. Y. 596; *Ryan & Nevins v.*

*Dox*, 34 N. Y. 307. "A resulting trust is created in creditor for debtor as to a part of the debtor's land, which the creditor verbally agreed to reconvey to the debtor, if he would waive his exemptions and permit the whole tract to be sold at sheriff's sale, under an execution levied upon it, and to be bought in by the creditor; and this resuling trust will be upheld, although the title to the land is acquired through a judicial sale, and will be upheld also against an objection of uncertainty."—*Beegle v. Wentz*, 93 Am. Dec. 762. Where one person receives a conveyance to property upon a verbal stipulation that he will dispose of it absolutely or conditionally for the benefit of another, he will be compelled to perform his engagement.—*Sledge's Admr. v. Clopton*, 6 Ala. 589. A court of chancery looks only to the equities of parties and regards the holder of the mere legal title as a trustee for the benefit of all parties equitably interested.—*Poole v. Cummings*, 20 Ala. 563; *Caple v. McCollum*, 27 Ala. 461.

When a mortgage is given for a pre-existing debt, the mortgagee is not a purchaser for value, nor entitled to protection against equities of which he had no notice; and if he transfers his interest as collateral security for an existing debt his assignee is not a purchaser for value.—*Banks v. Long*, 79 Ala. 319; *Fenno v. Sayre*, 3 Ala. 470; *Wells v. Morrow*, 38 Ala. 125; *Andrews v. McCoy*, 8 Ala. 920; *Boyd v. Beck*, 29 Ala. 713. A prior creditor who agrees with the seller to pay the price on notes given by the latter to third persons on which the purchaser is already liable as endorser, incurs no new obligation, and is not a purchaser who has paid the price.—*Hoyt Bros. Mfg. Co. v. Turner*, 84 Ala. 523. The purchaser of land in the actual occupancy of a vendee, or his tenant, under a parol contract to convey, is charged with notice of the vendee's title. *Price v. Bell*, 91 Ala. 180.

HARALSON, J.—1. The relation of vendor and vendee of land does not exist between the complainant and defendant, Kent. He did not sell the land to the complainant, and the latter did not purchase the same

from, and owed the former nothing on account of a
sale of the land. The contract between the parties was
verbal, and there was no consideration for it, passing
between them. The complainant could not sue and
recover damages of defendant for its breach; and the
general rule is, if an action at law will not lie on a
contract to recover damages for its breach, equity will
decline to decree its specific performance or execution.
*Comer v. Bankhead*, 70 Ala. 493.

The prayer of the bill is: "That upon the final hear-
ing of this cause, your Honor make and enter a de-
cree vesting in this complainant the title to the land
he purchased from Adeline Hill, enforcing the specific
performance of the contract as set out in the bill, and
for such other, further, additional or different relief
as the facts may warrant or equity demand." This
prayer, though not as aptly drawn as it might have been
for the declaration and execution of a constructive
trust, is sufficiently comprehensive and apt to have
such a trust declared in favor of complainant against
defendant, as the repository of the title of complainant
to the said 10 acres of land, and to require him to
convey the same to complainant. The words, "en-
forcing the specific performance of the contract as set
out in the bill," do not vitiate the prayer as one to
enforce a constructive trust, and may, without violence
to the general purposes of the bill, be stricken as sur-
plusage.

The inquiry then is, as to this phase of the case, Do
the facts as shown, justify the decree of a court of equity
declaring and enforcing a constructive trust in favor
of complainant against defendant, as to said 10 acres
of land?

It cannot be denied, under the facts disclosed, that
of land, and in receiving a court title of said 19 acres
of land, and in receiving a court title to the 40 acres,
acted for Dean as well as himself, and that Dean, as
well as Mrs. Hill, trusted him to so act, upon the faith
of the promise he made, that he would, afterwards,
convey the 10 acres to Dean.

We have heretofore announced as a correct propo-

[Kent *et al.* v. Dean.]

sition of law, that "Whenever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject, antagonistic to the person with whose interest he has become associated."—*Scottish U. & N. Ins. Co. v. Dangaix,* 103 Ala. 388, 394; *Waller v. Jones,* 107 Ala.331.

It requires no discussion of the facts disclosed to show, that Kent owned no interest whatever in Dean's ten acres of land.    He never paid a cent for it, and never pretended to own or have a title to the same, until he acquired it under the conveyance of Mrs. Hill as guardian, executed under the orders of court to him, on the faith of his promise to Dean and Mrs. Hill, that he would convey to him the title to the same.    This same conveyance was executed to him as stated, for the benefit of Dean as well as for himself, in order that each should acquire a good title to the separate parcels they had theretofore purchased from and paid Mrs. Hill for,—the title that they had theretofore received from her being imperfect.    This court title, as it is called, was devised to be procured, and was obtained by Kent, upon his promise, as the evidence satisfactorily shows, that he was procuring it for Dean and himself, and that he would convey to Dean as agreed. To allow him to retain the title and deprive Dean of it, under these circumstances, would be inequitable and unconscionable, and a fraud upon Dean.    Upon every sound principle of equity between them, he must be held to hold the title to the 10 acres in trust for Dean.

Such trusts, termed *ex maleficio* or *ex delicto,* are, as Mr. Pomeroy says, practically without limit, and in general, are properly applied, "Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other simi-

39

[Kent *et al.* v. Dean.]

lar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property in the hands of the original wrong-doer or in the hands of a subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved of the trust."—2 Pom. Eq. §§ 1053, 1055; 1 Story Eq. Juris. § 187; *Manning v. Pippen*, 86 Ala. 357; *Moore v. Crawford*. 130 U. S. 122.

2. The only question on the cross-bill of defendant, J. W. Vest, is, whether or not he was a *bona fide* purchaser for value without notice of complainant's claim to the 10 acres. The chancellor found that he had such notice as bound him, and in this we concur. Dean, as it satisfactorily appears, was in the actual possession of the land, at the time J. W. Vest acquired his mortgage from Kent, claiming it and exercising such acts of ownership over it of which the land was susceptible. Such claim and possession were sufficient to put the mortgagee on inquiry and charge him with notice.—*Price v. Bell*, 91 Ala. 180; *Anthe v. Heide*, 85 Ala. 236; *Burt v. Cassety*, 12 Ala. 734.

The decree of the chancellor for whatever reasons rendered, is correct, and will be affirmed.

Affirmed,