# ANTONIO MONROIG ET AL.

## *v.*

# C. B. PARKER ET AL.

San Juan, Equity, No. 942.

BILL FOR SPECIFIC PERFORMANCE.

Titles—Porto Rican Ganancial Law—*Lex Rei Sitæ.*

    1. Governs questions of land titles and includes the married women's law. This in Porto Rico is covered by the Civil Code, §§ 1316, 1327, and 1328, as to ganancial property.

Same—Nonresidence.

    2. A married woman owning property in Porto Rico is, as to it, governed by the local married women's law, whether she resides in Porto Rico or elsewhere.

Monroig v. Parker.

**Married Women—Purchase by a Husband.**

3. The title acquired by a married woman under a purchase by her husband is subject to the terms of that purchase. She is not, as to it, a third party under the Porto Rican law, or a bona fide purchaser under the principles of equity.

**Purchase of Several Tracts—Construed Together.**

4. In equity, where the transaction is satisfactorily shown to have been the purchase of one piece of land by a sugar central for the purpose of running a railroad across this and another piece of land, in order to reach still other territory, the transaction will be construed as a whole, and the omission to sign a right of way over part of the property in question will be remedied by a decree for a specific performance.

**Specific Performance—Damages.**

5. Specific performance will not lie unless damages have accrued; but to prevent the equitable remedy for such performance, the remedy at law for damages must be adequate and give a substantial equivalent for what is asked in equity. Cutting a railroad into two disconnected parts is not susceptible of adequate damages.

**Same—Other Route.**

6. A contract for connecting two pieces of property by a railroad will not be carried out by compelling a party to take the railroad outside of both properties, in order to pass from one to the other, particularly where the outside road would run over properties of other parties.

**Same—Elements.**

7. In order to secure specific performance the contract must have a certain end, be fair, concern real property, and the complainant must have performed his part. It is less a matter of right in the complainant than of discretion in the court. Great accuracy of averment and proof are necessary.

**Specific Performance—Performance by Complainant.**

8. There must be a mutuality of obligation and performance, but if the complainant has, under the circumstances of the case, satisfactorily done what the contract requires of him, he will be granted relief against the other party to the contract.

Opinion filed March 19, 1914.

*Mr. Frank Antonsanti* for complainants.

*Messrs. Jos. Anderson, Jr.,* and *O. M. Wood* for defendants.

HAMILTON, Judge, delivered the following opinion:

This suit was a case originally brought in law before the insular district court of San Juan by the complainants herein, and removed by the defendants to the United States district court. In order to conform to the pleadings of the new jurisdiction, what was called a reformed complaint was filed on the chancery side of this court on November 6, 1913. The complaint or bill in the case alleges in effect that defendant Cornelius B. Parker was, prior to April 28, 1911, the lessee from one Henry of two pieces of land called "El Quinto," bounded south by the road from Bayamón to Comerio, and "Rio Hondo," on the south side of the same road, and that said defendant had an option to purchase from the owner. That the complainants were and are the owners of a sugar central near Bayamón, known as "Juanita," and as such desired to extend a railroad to and across the Comerio road in order to reach new cane territory. That this led to negotiations with defendant C. B. Parker, who was willing to give the right of way over the Rio Hondo plantation, provided complainants would buy the bulk of the Quinto estate, leaving a strip of land in Parker for urbanization along the north side of the Comerio road, intersected, however, by the right of way in question, which would allow the complainants to operate the railroad desired. On April 28, 1911, a written agreement was accord-

ingly made, between Parker and the complainants represented by Valentin Monroig, in the following words:

"Articles of Agreement, Made this twenty-eighth day of April in the year One thousand nine hundred and eleven, in the City of San Juan between Mr. Cornelius B. Parker, resident of San Juan, forty-two years of age, married and administrator by profession, party of the first part, and the Sugar Company or Society known as "The Successors of A. Monroig," party of the second part, represented by Mr. Valentin Monroig, resident of San Juan, twenty-seven years of age, who hereby declares himself authorized duly and legally to enter into this contract, thereby binding not only himself, but the aforesaid company or firm, of which he is legal representative.

"The said party of the first part, lessee of the W. G. Henry property known as "El Quinto" de Bayamón, hereby grants to the said party of the second part, a right of way through the property known as "Rio Hondo" and "El Quinto" farms, entering at the Santa Catalina creek, crossing the Comerio road from west to east and thence passing through the "Rio Hondo" plantation, entering, traversing, and emerging at points to be determined by the parties to this agreement.

"The right of way shall consist of a strip of land not less than four meters and not more than five meters in width.

"The party of the second part is to furnish such switches to the cane now planted or hereafter planted by the party of the first part, as he shall request.

"This agreement is made with the understanding that a prior contract of sale entered into by the parties under this date and relating to the purchase of two hundred acres of land shall be carried out in full; if not, then this agreement shall be null and void.

Monroig v. Parker.

"This concession is given under the obligation of the party of the second part to transport only cane to the mill 'Central Juanita;' in case that the road should ever cease to be used for any other purpose than that of transportation of cane, then this agreement shall be null and void."

This was signed by all parties except defendant Janie B. Parker. The question in this case is, Has this agreement been carried out, and, if not, is it such that can be enforced by specific performance in this court?

Defendant C. B. Parker proceeded to get in the title of Henry, and on August 19, 1911, the parties signed deeds looking to carrying out the agreement. These consisted of two formal instruments,—a deed conveying 200.07 cuerdas (being the Quinto property less the strip), and a separate deed of an easement over the Rio Hondo property; but there was no deed signed for a right of way over the 75-foot strip reserved by Parker on the north side of the Comerio road.

Complainants allege that this was an oversight, and seek to have the instrument reformed or another one executed to cover this alleged mistake. Defendants deny that there was any mistake, and say nothing further was done because the complainants had got all that they wished. They refuse to make any such grant now for several reasons. In the first place, they say that Janie B. Parker was not a party to the contract of purchase, dated April 28, 1911, and is therefore not bound to sign anything further; in the second place, that there is a remedy at law; and third, that complainants are not in condition to seek reformation and specific performance, because they did not take all the land which the survey shows they had contracted to take.

The matter of dissolution of the preliminary injunction is

not now material, because the case comes up upon the merits, both sides having taken full testimony.

1. The Civil Code of Porto Rico governs questions of land title, and this extends the local ganancial law to all real property. This law will be found in sections which are as follows:

"Section 1316. To the conjugal partnership belong:

"1. Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.

"2. That obtained by the industry, salaries, or work of the spouses or of either of them.

"3. The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."

"Section 1322. All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife."

"Section 1327. The husband is the administrator of the conjugal partnership."

"Section 1328. Notwithstanding the power which the husband has as administrator, he shall not have the power to give, to sell and to bind for a consideration the real estate of the conjugal partnership, without the express consent of the wife. Every sale or agreement which the husband may make in respect to the said property in violation of this section and the other provisions of this Code, or in fraud of the wife, shall be null, and shall not prejudice her or her heirs."

2. Complainants allege that this law does not apply to an American citizen not domiciled in Porto Rico. There might

Monroig v. Parker.

be some question on the evidence as to where the domicil of the defendants is, but that is not material. The *lex rei sitæ* governs all matters relating to real property. Unless a foreigner is prohibited from owning land, or except so far as conditions are affixed to his ownership, he holds land in Porto Rico upon the same title as anyone else. It is not material whether he comes to Porto Rico to live or not. Whatever rights in real property are given to a married woman by the Porto Rican law apply, so far as relates to the land owned, to the wife of the landowner, whether she ever comes to Porto Rico or not. There cannot be two laws governing the same real property at the same time. The law of New York will govern defendant Janie B. Parker as to all lands located in New York, but have no extraterritorial effect, and cannot apply to her interests here. Danner v. Brewer, 69 Ala. 192; Bouvier's Law Dict. S. V., *Lex Rei Sitæ;* Story, Confl. L. § 454.

3. Under the Porto Rican law it is unquestionably necessary that the wife join in a conveyance of land or easement, and the defendant urges the nonjoinder of Janie B. Parker in the April contract of sale as a reason for not compelling her to correct any omission, if there be any, in the conveyances of August 19, 1911.

The evidence seems to show that, at the time the contract was made, Mrs. Parker had no interest in the property. Her husband was the lessee with a right of purchase, and until this right was exercised there was nothing to which her ganancial right could attach. The testimony seems to be that the money which defendant C. B. Parker obtained from the complainants was used to carry out this right of purchase, and that, but for payment of complainants' money, there would not have been

Monroig v. Parker.

anything to which Mrs. Parker's rights could attach. The point therefore is, · Can it be allowed in a court of equity that a married woman acquire an interest in land incidental to her husband's purchase by means of money paid by another for her husband, and then refuse to join in the deed of part of it to this third party as contemplated in the original arrangement made by her husband? To state the question is equivalent to answering it. The wife in such case is not a third party in any sense under the Porto Rican law, nor a bona fide purchaser for value in any sense under the principles of equity. Whatever right Janie B. Parker acquired in this land was under and in subordination to the contract of purchase and sale made by her husband. It would be inequitable to permit her to set up such a defense. It is as when land is bought with a vendor's lien on it for the purchase money. The object of a court of chancery is to confine parties to an equitable use of their rights, and not to permit them to enforce legal claims in such cases as this.

4. The parties must therefore be held to be properly before the court and subject to its jurisdiction. The main question, however, is, What are their rights under the testimony in this case? The evidence seems to show that the original object of the complainants was not the purchase of land, but the running of a railroad through both tracts of land leased to defendant Parker, and that this was changed into a purchase of the larger part of El Quinto, as the condition on which defendant Parker would permit the running of a railroad through the rest of his lands. Admitting, for the sake of argument, that the defendants did carry out their contract, the evidence seems to show that omitting the execution of a deed of easement from

El Quinto to the Comerio road was a mistake. The Parkers did not, at the time of the execution of the deed, object to making such a conveyance, and there is no reason to suppose that they would have objected at that time. The notary who superintended the drawing of the papers was unfamiliar with the details, and the evidence seems to show that it was an oversight on his part, and nothing else, which caused the failure to draw a third instrument embracing this right of way as a link, or to embrace it in the right of way which covered the land on the south side of the road.

There is evidence that nothing was said about it for some time, and also evidence that one of the Monroigs, who was not familiar with the transaction, made some effort to adjust the matter, perhaps even to buy the right of way over again; but the evidence convinces the court that, however this may be, the right already existed to this right of way. Waterman, Spec. Perf. § 491.

5. It is urged by the defendant that, at most, this constituted a breach of contract, for which the law affords redress by way of damages. To this the court cannot assent. It is, of course, possible that there can be a money compensation for the loss of this right, as it is conceivable that there might be a money compensation for the loss of almost any other right. It is held that there can be no specific performance unless damages would lie. Comer v. Bankhead, 70 Ala. 493. But to prevent the equitable remedy, that at law must be adequate. A remedy, to be adequate at law, must give a substantial equivalent for what is asked in equity. It is sufficient for specific performance that the ends of justice can be subserved only in this way. Waterman, Spec. Perf. § 12. It would seem from the plead-

ings and the evidence that the original contract contemplated a continuous railroad line through El Quinto and Rio Hondo at the point which is now in controversy. Cutting a railroad in two is not a matter which is fairly susceptible of adequate damages, for the reason that it could no longer be operated as a railroad.

6. It is further argued that the complainants would have an adequate remedy by carrying their railroad further to one side, and passing up what is called the Scott road to the El Quinto property. If, however, the contract is for connecting two pieces of property by a railroad, or, in other words, for a continuous railroad which shall cross both of them in its operation, this will not be met by a railroad which must go outside of both properties in order to pass from one to the other, and by a route which, so far as the evidence shows, was not contemplated at all. Moreover, this substitute would require complainants to pass over the Scott road, and there is no evidence that the Scott road belongs to them, and no evidence that whoever it does belong to would permit a railroad to be operated along it. If it be a public road, there must be permission obtained from public authorities, and that would be introducing an element into the case which was not provided by the original contract.

7. It is held that for specific performance the contract must be fair, for a specific thing, concern real property, and the complainant must himself have performed his part. Walker, Am. Law, 700; Moon v. Crowder, 72 Ala. 80. Specific performance, furthermore, is less a matter of right in the complainant than of discretion of the court. Story, Eq. Jur. § 742; Rose v. Henderson, 63 Fla. 564, 59 So. 138. Great accuracy of aver-

ment and proof are required.   Meyer v. Mitchell, 75 Ala. 482.
These prerequisites exist in the case at bar.   There is in the
mind of the court little or no doubt that the original plan was
to pass over the strip of land now in dispute, that this has been
wrongfully prevented by the defendants, and not by any fault
of the complainants, and that no remedy is adequate except
carrying out the contract itself.

8. The defense upon the facts is that the complainants did
not carry out their side of the contract in that they did not take
some 3 cuerdas or more of El Quinto, and that, therefore, they
could not in equity be permitted to have specific performance
of a contract which they themselves have not fully carried out.
There is no question that there must be a mutuality of obliga-
tion and performance in order to justify a decree of specific
performance.   Dorsey v. Packwood, 12 How. 126, 13 L. ed.
921; Hunt v. Rhodes, 1 Pet. 1, 7 L. ed. 27.

The pleadings do not allow us to go into the matter of
variation of the contract.   There is, on the one hand, no offer
in the bill to do equity by paying for any land which, if
included in the contract, was not included in the deed, and,
on the other hand, there is no counterclaim in the answer look-
ing to specific performance by having the complainants pay any
sum for this land which they did not take.   The parties seem
to rest their case entirely upon the facts as they stand, the com-
plainants alleging compliance, and the defendants alleging
noncompliance with the contract of April 28, 1911.

The facts seem to be that, while the contract called for the
retention by Parker of a strip 75 feet wide on the north side
of the Comerio road (less the right of way now in question),
this was upon the erroneous idea that the Comerio road was

straight. The answer says a rectangular strip 75 feet wide was retained. The road not being straight, however, the engineers varied the shape of the strip retained in order to give Parker a depth of 75 feet at the narrowest point. It would require considerable particularity in survey and description to run a line parallel to the Comerio road and following its curves, and so, instead, the plan was adopted of running a straight line from a point 75 feet from the road at one end, and which would and did come out at the other end on what is called the Scott road some 160 or 170 feet from the Comerio road. All this seems to have been considered on the 19th of August, 1911, and the deed was executed accordingly, the attorney for the complainants saying that they had all the land that they wanted, and the defendants making no objection to the form of the deed. The defendants now allege, however, that they took the omission to embrace 3 or 4 cuerdas of land in the deed as the equivalent for not.enforcing the right of way over the strip of land now in controversy. A careful examination of the evidence relating to the execution of the deeds fails to show anything that would justify this contention. It was not so expressed at the time by either party. If the deed covered less land than the defendants understood they were selling, they should have declined to execute it, and alleged that ground for not going further. This they did not do. In point of fact the contract of April 28, 1911, which the parties were then carrying out, only called for 200 cuerdas of land, and in taking 207 cuerdas the complainants were certainly substantially performing their obligation. There cannot be said to be a substantial variance between the contract and its performance on the part of the complainants. Waterman, Spec. Perf. § 128.

Monroig v. Parker.

As the pleadings and evidence do not fully cover the question of boundary at the Scott road, this is a matter of law and of survey, and is not necessarily involved in the present litigation; and nothing is to be held as decided on that point.

It follows, therefore, that the complainants are entitled to relief, and a decree will be entered to that effect, establishing the right of way sought in the bill, and making permanent the temporary injunction. As there seems, however, to have been room for an honest difference of opinion in the matter, each party will pay his own costs.

It is so ordered.