159 So. 212

## HENDERSON v. FIRST NAT. BANK OF BIRMINGHAM.

### 6 Div. 640.

Supreme Court of Alabama.
Jan. 17, 1935.

Rehearing Denied Feb. 21, 1935.

John W. Altman and W. A. Weaver, both of Birmingham, for appellant.

Horace C. Wilkinson, of Birmingham, for appellee.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

660

employer, is named as the beneficiary; (2) to declare a constructive trust arising from the fraud of Bell, alleged to have been practiced on Henderson, complainant's intestate, when the application for the insurance was made; and (3) to redeem the policy from a pledge made to secure an indebtedness due from Henderson to Bell and for an accounting to ascertain the sum of the indebtedness secured by such pledge.

The bill was subsequently amended to the effect (1) that Bell feloniously brought about the unlawful killing of Henderson and thereby forfeited all interest as the named beneficiary under the policy, and which interest complainant averred "reverted by reason of such fraud and felony to the estate of S. H. Henderson"; (2) that, if the policy was not taken as security for an existing debt, it was taken for the purpose of securing some indebtedness claimed by Bell against Henderson; and (3) that the fact that Bell was named as beneficiary would not avoid "an accounting and a redemption of the policy from any debt which the policy secured."

Respondent's answer was made a cross-bill denying the material allegations of the bill as amended; asked the court to award the respondent interest on the amount involved during the pendency of the suit. The complainant answered the cross-bill, denying the wrongful interposition of a claim to the proceeds of said insurance policy.

During the pendency of the litigation, the American Central Life Insurance Company, by agreement, deposited the money in the bank to stand in lieu of the insurance policies, and the final decree directed distribution of this fund contrary to the insistence of the complainant, and denied the allowance of interest as sought in the respondent's cross-bill.

The law of the case was settled on first appeal. American-Traders' Nat. Bank v. Henderson, 222 Ala. 426, 133 So. 36. It was established by the admissions of R. P. Henderson, son of decedent S. H. Henderson, and by his letter to the agent of the Pacific Mutual Insurance Company, of date of January 22, 1929, some months after his father's (the insured) death, that the son knew of the policies of insurance in question and that they were payable to A. W. Bell, as employer, that S. H. Henderson's estate was not designated as a beneficiary therein, and that he sought to prevent collection of the insurance by the beneficiary designated on the ground of fraud in the procurement of the insurance. It was also insisted that Bell had

THOMAS, Justice.

This is the second appeal. The appeal from the decree overruling demurrers to the bill as amended is reported as American-Traders' Nat. Bank et al. v. Henderson, 222 Ala. 426, 133 So. 36. The several aspects of the bill were there stated to be: (1) To reform an insurance policy on the life of complainant's intestate, issued by the American Central Life Insurance Company, in which A. W. Bell,

no insurable interest in the life of S. H. Henderson. After the death of Bell, July 6, 1929, R. P. Henderson advanced the claim, as indicated, that said Bell misrepresented or fraudulently concealed from S. H. Henderson, the contents of the application for insurance to Bell, and that the policies were payable to him (Bell) and not to Henderson's estate; that is, the son—"the moving spirit of this litigation"—several years prior to writing to Fitts on January 22, 1929, and before the death of Bell on July 6, 1929, knew the nature and contents of the application for insurance to Bell, and how the policies of insurance were made payable.

It is stated in the decree that—

"If R. P. Henderson knew * * * that the policy of insurance was payable to A. W. Bell, as employer, and it conclusively appears that he did know this because he so stated in his letter to Mr. Fitts * * * and if he knew that four years prior thereto A. W. Bell misrepresented the contents of the application for the insurance, it is inconceivable to me that he would have kept this fact concealed from everybody in the world, so far as this evidence shows, until after A. W. Bell's death on the 6th day of July, 1929, especially in view of the fact that R. P. Henderson was making such strenuous efforts to collect the proceeds of the policy, or to prevent A. W. Bell from collecting the proceeds of the policy. This convinces me that the alleged conversation between A. W. Bell and S. H. Henderson about the application for insurance did not occur. * * *

"Notwithstanding R. P. Henderson's assertion that he did not know how the policies were payable until he got the information through his attorney * * * the court is forced to the conclusion by his admissions and by the letter that he wrote Mr. Fitts, that he knew, in January, 1929, that the policy was payable to A. W. Bell, as Employer; that although he was making strenuous efforts to have the policy collected for the benefit of the Henderson Estate and to prevent Bell from collecting the policy, he never intimated or claimed that A. W. Bell had misrepresented the contents of the application for the policy that his father executed some four years previously, until some several months after A. W. Bell died.

"In addition to this very disparaging circumstance, R. P. Henderson testified very positively that his father's signature to the application for insurance was procured along about the 19th of February, 1925. The witness was positive that the application for insurance was executed in the month of February, 1925. All the other witnesses who testify about the execution of the application for the policy of insurance unequivocally state that S. H. Henderson's signature was procured to the application sometime in February, 1925. The first application was dated January 14, 1925, and bears the stamp of the insurance company indicating that it was received at Indianapolis, Indiana, on January 19, 1925. The second application is dated January 21, 1925, and was received at the Home Office of the insurance company on February 5, 1925. It was, therefore, impossible for A. W. Bell to have talked to S. H. Henderson about the application for insurance along about February 19, 1925. Nobody claims that there was more than one conversation between A. W. Bell and S. H. Henderson about signing an application for insurance."

This view of the lower court is supported by the evidence when considered as a whole. This phase of the evidence, that A. W. Bell did not misrepresent the contents of the application for insurance to S. H. Henderson, was supported by Mr. Brower as a witness, who testified that R. P. Henderson made no claim to him representing the other insurance company (Pacific Mutual Life Insurance Company); that S. H. Henderson's signature to the applications for insurance had been secured by a false statement or misrepresentation on the part of A. W. Bell; that his sole insistence was that the decedent did not take out any insurance; "that Bell just took out these things and put down false examinations of his father and put down false statements; and pointed out particularly to me that in the examination, or the statement of the application, the name of his father's father, and when he died, and what he died with; and stated to me—to point out that that was a thing that Bell had put in there—that his father had nothing to do with the thing at all, that his father didn't know who his father was, that his father was, as he termed him, a 'bush child'; and that was the general trend of the whole proposition;" that Bell acted alone on a false application, medical examination, and the like; and that R. P. Henderson made no claim that the estate of his father was interested in the insurance policies.

This phase of the evidence found support in the whole evidence of Edmundson, the agent of the insurance company. He testified that it was at his suggestion that Bell took the insurance on Henderson's life; that Bell stated that he would interview Hender-

son, which was done, and later reported that the issue of insurance was satisfactory to S. H. Henderson, whereupon the agent filled out the application for insurance as it was executed and made to his company, designating "Alse W. Bell, employer," as beneficiary; that the agent gave the application to Bell, who secured the signature of Henderson. The photostatic copy of the application shows the genuine signature of the insured. Thus it was at the instance or suggestion of that agent that the debtor insured the life of Henderson for this employer, and, as for that, creditor, many years before Henderson's death. That the annual accruing premiums were necessarily large did not make a different case. The witness Edmundson testified further that, after he had delivered the policies to the beneficiary, Bell, he went to Henderson's place and informed him that he had delivered the policies to Bell pursuant to the application, and then solicited the aid of S. H. Henderson in writing a policy on the life of R. P. Henderson (his son) of like import or terms to those issued on the father's life. This was consummated with the help of S. H. Henderson, designating A. W. Bell, employer, as beneficiary, and this insurance was of date of September 3, 1925, as shown by the photostatic copy in the record.

The son, R. P. Henderson, as a witness, made no contention that he was misled or defrauded into the execution of his application for insurance, knew the policy in question had been delivered to Bell during the life of that assured, and did not claim that the policy as made was the property of his estate.

The testimony of Miss Gribbon supported the view of ownership and possession of the insurance in and by Bell—the premium notices were sent to him, and he made the payments over the long period from their issue to the death of Henderson.

■ The decisions in this jurisdiction are uniform and to the effect that an insured may cause to be named as beneficiary in a policy of life insurance any person whom he may select without regard to the question of what is termed, in insurance, an insurable interest of such beneficiary in the life of the insured. The rule is to the contrary as to insurable interest in an assignee or transferee. Metcalf v. Montgomery, Superintendent of Banks et al. ante, p. 156, 155 So. 582. The case before us is that of the insurer selecting or designating the beneficiary, and no right of an assignee is here involved, as was the case in Alabama Gold Life Insurance Co. v. Mobile Mutual Insurance Co., 81 Ala. 329, 1 So. 561, cited by appellant.

■ It is further established that courts should exercise great caution and require a higher degree of proof in cases of reformation of written instruments. The "very great particularity" of averment in such a case, as well as the "very clear proof" required to establish the issue of fact, has been the subject of announcement and application in many decisions of this court from its earliest period. 1 Story's Eq. (14th Ed.) §§ 152, 153; Campbell v. Hatchett, 55 Ala. 548; Dexter v. Ohlander, 95 Ala. 467, 10 So. 527. Such relief is never granted upon a mere probability or mere preponderance of evidence. Parra v. Cooper et al., 213 Ala. 340, 104 So. 827; Cudd v. Wood, 205 Ala. 682, 89 So. 52; Lewis et al. v. Belk et al., 219 Ala. 343, 122 So. 413; Cobern v. Foshee, 221 Ala. 301, 128 So. 779; Webb et al. v. Sprott, 225 Ala. 600, 144 So. 569.

■ It was declared on the first appeal in this case, that courts of equity will reform a contract of insurance only under the rules of pleading and proof as extend to such relief as to other contracts. American-Traders' Nat. Bank et al. v. Henderson, 222 Ala. 426, 133 So. 36; West End Sav. Bank v. Goodwin et al., 223 Ala. 185, 135 So. 161; section 6825, Code.

■ The evidence has been examined, and complainant has not convinced the trial court, or this court, that A. W. Bell misrepresented or defrauded S. H. Henderson as to the contents of the application for insurance, the nature and contents of the policies as issued, and that they were delivered and retained by Bell, who paid the large premiums thereon as the owner and not as an assignee or pledgee to secure a debt. This latter theory, introduced by way of a late amendment (November 4, 1929), charging that Bell's personal representative held the policies as collateral security for the payment of a debt, was declared by the trial court as not sufficiently supported by the evidence; and in this conclusion or finding of fact we concur. We have indicated Henderson had the right under the law to make his employer his beneficiary, and this he could have done without regard to the fact of, or the amount of his indebtedness to Bell or to the latter's bank. This right was in no wise dependent upon Henderson's continuance as superintendent of cultivation of Bell's farm at or near Vincent or elsewhere.

■ ■ It is charged in the last amendment to the bill that Bell was intentionally responsible for, or feloniously procured, the death of Henderson. If such was the established fact, there could be no recovery by such

wrongdoer or by his privy in estate, unless the case falls within the operation of an incontestable clause. Lee v. Southern Life & Health Ins. Co., 19 Ala. App. 535, 98 So. 696; 37 C. J. 576, § 341. That phase of pleading and evidence is not sufficiently supported to warrant the relief prayed.

 The question of fraud in its sufficient charge, and the rule of proof required, that it be clearly and satisfactorily established as required by our decisions (Southern R. Co. v. Arnold, 162 Ala. 570, 50 So. 293), was found by the trial court not to have been established by the complaint, and we are in accord with the view announced in the decree.

The law was well announced on the first appeal as to the phase of the case seeking to charge the Bell estate as a trustee of, or to impose a constructive trust upon, the policies of insurance or the proceeds thereof. American-Traders' Nat. Bank et al. v. Henderson, 222 Ala. 426, 133 So. 36. The burden was upon the complainant to adduce testimony that so reasonably satisfied the court that the policies had been obtained through actual fraud, misrepresentation, or concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, that equity will impress a constructive trust on the property so acquired. Kent et al. v. Dean, 128 Ala. 600, 30 So. 543. We agree with the trial court in the result of the evidence, that there was no pledge or assignment of the policy; that the policy was permitted, with knowledge of the facts and result, to be purchased for and by Bell; that it was his property, a fact well known and intended by S. H. Henderson in life; and that for the long period of its issue the assured did no act or uttered no word to indicate that he had or expected any interest therein. The designation of the beneficiary was valid in its inception, and so remains. 1 Cooley's Briefs on Ins. § 414 et seq.; Wurzburg v. New York Life Ins. Co., 140 Tenn. 59, 203 S. W. 332, L. R. A. 1918E, 566; West End Saving Bank v. Goodwin et al., 223 Ala. 185, 135 So. 161.

A discussion of the evidence is unnecessary other than to say that it was insufficient to authorize the trial court to declare a trust existed in favor of S. H. Henderson's estate in the proceeds of the policy or the money held in lieu thereof.

There was no error in the trial court denying the relief sought under complainant's bill as last amended, and no error in denying the cross-complainant interest, as prayed, on the fund deposited in lieu of the policies of insurance.

The decree of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.