# Ohlander *v.* Dexter.

*Bill to Reform Written Instruments and enjoin Judgment thereon.*

1. *Reformation of writing.*—Courts of equity in the exercise of their jurisdiction to reform written instruments, proceed with the utmost caution, and will not grant relief in such cases unless the proof is clear, exact, and satisfactory.

2. *Mistake as to legal effect no ground for relief.*—Equity will not interfere to grant relief when the agreement made, is that intended to be made, but the parties were mistaken as to its legal effect.

Vol. 97.

[Ohlander v. Dexter.]

APPEAL from Chancery Court of Montgomery.

Heard before Hon. JOHN A. FOSTER.

This is the fourth appeal in this cause.    See, 89 Ala. 262; 93 Ala. 441; 95 Ala. 467.

E. P. MORRISETTE, and WATTS & SON, for appellant, cited *Hemphill v. Moody*, 64 Ala. 468; *Clark v. Hart*, 57 Ala. 390; *Hardigree v. Mitchum*, 51 Ala. 151; *Turner v. Mason & Kelley*, 70 Ala. 85; 1 Story's Equity, §§ 155-7; *Harrod v. Weaver*, 72 Ala. 373; *Guilmartin v. Urquhart*, 82 Ala. 570; *Lockhart v. Cameron*, 29 Ala. 355; *Rumbly v. Stainton*, 24 Ala. 712; *Waring v. Lewis*, 53 Ala. 615; *F'ench v. Garner*, 7 Port. 549; *Dexter v. Ohlander*, 93 Ala. 441; *Campbell v. Hatch*, 55 Ala. 548.

W. L. THORINGTON and L. C. SMITH, for appellee, cited *Shires v. Hayes*, 36 N. J. Eq., page 396; *Gillespie v. Moon*, 2 John's Chan. Rep. 585; *Eastman v. Provident Mutual Relief Ass.*, 5 Lawyer's Reps. Annotated 712, 713; *Kennard v. George*, 44 N. H. 446; Pomeroy's Eq. Jur., Vol. 2, 845; *Larkins v. Biddle*, 21 Ala. 252.

COLEMAN, J.—A certain voluntary association of individuals, desiring to purchase a house and lot of land situated on the north-west corner of Dexter Avenue and Bainbridge Street in the city of Montgomery, entered into negotiation with Ohlander to procure from him a relinquishment of a five year lease of the premises held by him, and which stood in the way of getting present possession under a deed of conveyance from the owner of the fee.

The negotiation with Ohlander resulted in the execution of the following written instruments introduced in evidence as exhibits "A" and "B."

### Exhibit "A."

Montgomery, Ala., August 27th, 1887.

I have received from Mr. A. Ohlander a relinquishment to his lease with L. Lawall for consideration of One Hundred and Fifty Dollars to be paid him in ten days, and use of the premises until Nov. 1, 1887, free of rent.

(Signed)     R. P. Dexter.

### Exhibit "B."

In consideration of One Hundred and Fifty Dollars to be paid to me within the next ten days and to allow me to con-

tinue the use of the store-house north-west corner Dexter
Avenue and Bainbridge Street for use of storing furniture
until Nov. 1st next free of rent, I agree to relinquish and
give up all my right and claim to above mentioned store-
house that I have by virtue of a five years lease from Mr.
Lawall.

Montgy, Ala., Aug. 27th, 1887.

(Signed)        Aug. Ohlander.

On the 31st day of October, 1887, Ohlander moved out
and surrendered the possession of the storehouse, and shortly
afterwards sued Dexter in a court of law for the one hundred
and fifty dollars.   This suit resulted in a judgment for Ohlan-
der, and on appeal to the Supreme Court the judgment was
affirmed.   Dexter then filed the present bill in the Chancery
Court asking to be relieved from the judgment of the law
court.

The averments of the bill, substantially are, that "orator
in writing, (exhibit A,) by inadvertence and mistake em-
ployed language, the legal effect and operation of which is
materially and essentially different from what was intended
both by orator and the said Ohlander, the said Ohlander
and orator being unlearned in the law, and neither of then
knowing that the language used in said receipt was suscep-
tible of the interpretation placed upon it by the courts, and
in giving said receipt, orator intended simply to give the
said Ohlander a paper writing showing that orator had re-
ceived from him the said paper writing signed by the said
Ohlander and the words "for consideration of one hundred
and fifty dollars to be paid by him in ten days and use of
the premises until November 1st, 1887, free of rent," used in
said receipt was intended by orator as referring to and
descriptive of the paper writing signed by the said Ohlander,
and the said Ohlander accepted said receipt with the same
intention and understanding as that which influenced orator
in making and delivering the same," &c.   The prayer of the
bill is that the "writing or receipt hereinabove described
may be reformed under the direction and decree of the court;
or if mistaken in this relief, that it be delivered up and can-
celled by the court, and for a perpetual injunction," &c.
The answer of the defendant denies all the material aver-
ments of the bill and "avers positively that he intended to
receive from complainant his written obligation to pay de-
fendant one hundred and fifty dollars for the transfer and
relinquishment of his lease contract and without which he
would not have signed and placed in the hands of the com-

plainant his relinquishment of his whole interest in said
lease contract, that defendant believed at the time that such
was the construction placed by complainant upon the char-
acter and purpose of said writings contemporoneously exe-
cuted by and between complainant," &c.

Upon proof at the final hearing the Chancery Court held
that plaintiff was entitled to relief, that it was unnecessary
to reform the writings as the same purpose could be effected
by an injunction, and decreed a perpetual injunction against
the enforcement of the judgment.

Equity will not interfere to grant relief, when the agree-
ment made is that intended to be made, but the parties were
mistaken as to its legal effect, but if the parties undertake
to draw up a particular agreement and by the use of inapt
words, another and different agreement is executed upon
clear and satisfactory proof of the terms of the agreement
intended to be made, and of the mistake, equity will reform
the instrument so as to make it conform to the intended
agreement.—*Larkins v. Bidell*, 21 Ala. 253.    Conceding for
the present that the averments of the bill, bring complainant's
case within the rule which entitles him to relief upon proper
proof, we will examine the evidence under the rules of law
applicable, when parties seek to reform a written instrument.

It is not pretended there was any fraud or undue influence
practiced by Ohlander.    The complainant himself draughted
the instrument in his own language, and without suggestion
as to the terms to be employed in executing the instrument.

The courts are unanimous in holding that to entitle the
plaintiff to relief in such cases the proof must be clear,
exact and satisfactory.— *Guilmartin v. Urquhart*, 82 Ala. 570,
or as expressed in *Trapp & Hill v. Moore*, 21 Ala. 697, "if
through mistake, a written agreement contains substantially
more or less than the parties to it intended, or, from igno-
rance or want of skill in the draftsman, the object and in-
tention of the parties as contemplated by the agreement is
not expressed in the written instrument by reason of the use
of inapt expressions upon clear and satisfactory proof of
such mistake, equity will interfere and reform the agreement,
so as to make it conformable to the true intent of the con-
tracting parties."    The effect of the averment of the bill is
that it was not the intention to create an obligation to pay
money but merely to give a receipt, acknowledging that the
maker had received from Ohlander a writing in which
Ohlander obligated himself to transfer his interest in the
property held by him by virtue of his five years lease from
L. Lawall.    The two instruments, exhibits A and B, were

[Ohlander v. Dexter.]

executed contemporaneously, and should be considered together in weighing the evidence. Independent of parol proof the obligation imports an absolute promise by complainant to pay a certain sum within a given time, and the consideration for which was the relinquishment by Ohlander to Dexter of his leasehold interest in the property. The subject of contract, being the sale and purchase of an interest in lands of a term exceeding one year the statute of frauds necessitated that there be a note or memorandum in writing, subscribed by the party to be charged. Exhibit B, subscribed by Ohlander was an absolute agreement to relinquish his leasehold interest for an expressed consideration, without condition; and fully complied with the statute of frauds. The obligation was certainly binding on him, and in the absence of fraud, mistake or undue influence parol proof would not be admissible to add to or vary the legal effect of his obligation. Unless Dexter by the instrument signed by him, became legally bound to pay the consideration agreed upon, the writings would present a strictly unilateral contract, binding upon Ohlander alone, and without any consideration to support it. Neither in a court of law nor equity could Ohlander by the introduction of parol evidence, add to or vary the legal effect of his written obligation, and thus avoid legal responsibility. The same rules of law apply to Dexter and are conclusive upon him. It is not permissible for Dexter to add to or vary the terms of the agreement subscribed by Ohlander by parol evidence in order to give force to the contention, that the paper subscribed by him (Exhibit "A") was intended merely to show that he was the depository of the obligation signed by Ohlander, and that it was for this and no other purpose. The bill does not aver, as we have stated, that there was any error or mistake in the instrument signed by Ohlander. It is only in the evidence that a different meaning and legal effect is attempted to be given to this part of the contract.

In his deposition Dexter testifies that the written instrument signed by Ohlander was intended "to give an option of ten days in which to examine the title and decide whether we would buy or not,"   .   .   "that the purchase of the lease would be conditioned upon the parties taking the property provided the title was good." That Ohlander only agreed to relinquish the lease "in case we paid him the $150.00." The witness A. B. Agee testifies that he can not remember distinctly the understanding of the parties as expressed in the conversation at the time between them but as understood and as far as remembered "Ohlander was to be

paid one hundred and fifty dollars for a relinquishment of his leasehold interest." "That when Ohlander was paid one hundred and fifty dollars he was to relinquish his leasehold interest." "There were papers passed between them but I do not remember who wrote them. Dexter signed one and Ohlander the other. Ohlander required a consideration of one hundred and fifty dollars to give up his lease. Dexter wrote out a paper about the payment of the one hundred and fifty dollars to Ohlander. The substance of the paper given by Dexter to Ohlander, as I remember was, that in consideration of $150.00 to be paid to him, that Ohlander was to release his interest in that property." Other statements of this witness tended to show that the agreement of Ohlander was intended only as an option or conditional agreement to sell his leasehold interest.

The witness Brown, testifies that he never read the papers, or heard them read, that he remembers substantially all of the conversation he heard, but he did not know that he heard it all, that "it appeared that Dexter and Ohlander had talked the matter over before and that what he heard was simply the conclusion of the agreement." He says "Dexter told Ohlander that he wanted him to sign an agreement that he would surrender his lease in consideration of one hundred and fifty dollars, Ohlander assented to that, an agreement was written out by Dexter and signed by Ohlander. Then Ohlander asked Dexter to give him a receipt for that agreement, which Dexter did. It was understood in that connection that Ohlander was to receive one hundred and fifty dollars for his lease if the titles were all right, and if not he was not to receive anything."

The evidence of W. C. Agee on the point in question is very brief. He says : "At the time this option was taken from Ohlander he came into the office and it was written and signed there. After it was written out and signed by Ohlander he asked Mr. Dexter for a receipt for that paper, which Mr. Dexter gave him. Mr. Ohlander's language was "give me a receipt for that paper." That Ohlander accepted the paper "and went out of the office without having said anything further." Other witnesses were examined by the complainant, but we have stated substantially the testimony upon which he must rely to sustain the conclusion reached by the equity court. When considered in connection with the denials of the answer of the respondent, his positive testimony that the paper was executed to him in consideration of his written agreement to relinquish his interest in the property, and the character of the writings themselves

31-97

and especially the absolute obligation on his part to relin-
quish his lease for a consideration of one hundred and fifty
dollars to be paid in ten days, which bear him out in his
version of the transaction, we do not hesitate to declare
that the evidence falls far short of the rule which requires
that the proof shall be "clear and satisfactory," before a
court of equity will interfere to reform the written agree-
ment. The case has been so severely litigated, this being
the fourth appeal, including the two appeals from the Cir-
cuit Court we have felt justified in considering the merits
of the cause under the evidence, upon which the Chancery
Court seems to have acted.

Much of the testimony was illegal and inadmissible. As
a bill to reform the written agreement, it is defective. It
no where pretends to set out the language in which the
parties intended the agreement should be framed, and it
would be impossible to reform the agreement under the evi-
dence, without doing violence to the principle of law, which
requires the proof to "be clear, satisfactory and exact."
The complainant Dexter drafted the instrument in his own
language. It was accepted by Ohlander as satisfactory with-
out comment. It was but a reasonable and natural obliga-
tion and consideration for the absolute agreement of Ohlander
by which he relinquished his leasehold interest in the prop-
erty. Whatever may have been the purpose of complainant
and his opinion as to the legal effect of the writings sub-
scribed by him, we would not be justified under the evidence
in holding that Ohlander's understanding of the agreement
was, that he should receive nothing in consideration of the
relinquishment and transfer of his interest in the property.
We incline to the view that much of the testimony of com-
plainant's witnesses are conclusions of their own drawn from
the language of defendant and understood by them, when
he asked as they testify "for a receipt." A mere statement
to this effect would be wholly insufficient, to authorize the
conclusion that a valid absolute agreement to pay a sum
certain on a certain day for an expressed consideration was
intended to operate only as a receipt.

It may be further stated, that if the pleadings and rules
of law permitted us to consider all the evidence as legal,
when applied to the two instruments, which must be con-
strued together as constituting one entire contract, the facts
bring the case within that class of cases to which the maxim
"*ignorantia legis, neminem excusat*" applies. Against simple
mistakes of law no court will grant relief.—*Clark v. Hart*,
57 Ala. 390; *Kelly v. Turner*, 74 Ala. 518; *Hardigree v. Mitchum*,

51 Ala. 151; *Hemphill. v. Moody*, 64 Ala. 473. Under any view in which the case may be considered, we are satisfied that complainant is not entitled to relief.

A decree will be here rendered dissolving the injunction granted by the court below, reversing the case, and dismissing complainant's bill.

Reversed and rendered.