# Moore *et al.* v. Tate.

*Bill in Equity to enjoin an Action of Ejectment and reform a Written Agreement.*

1. *Reformation of writing in equity ; ignorance of legal effect ; burden of proof.*—When the terms of an agreement employed by the parties result in a contract different from the one really entered into, by reason of ignorance or misapprehension of their legal effect, a court of equity will reform it ; but the burden is upon the complaining party to show by evidence clear, convincing and satisfactory that the written instrument does not truly express the real agreement of the parties.

2. *Same ; same ; case at bar.*—On settlement of an estate a compromise was entered into by the heirs, one of whom had received a life estate in land and property in excess of that received by the others. By the agreement the life tenant was to retain "all such real estate, title and interest" as he had and took in the land, and the personal property "mentioned in the two deeds of gift" referred to, he to relinquish all other interests in the estate, and pay to the heirs $750 each. The heirs of the life tenant by bill in equity sought to reform the agreement on the ground that the reversion was to have been relinquished to their ancestor. The instrument sought to be reformed was more than 40 years old, was drawn by an attorney, all parties being represented by attorneys. The parties to the agreement were dead, and the only evidence impeaching its correctness was that of two witnesses who do not state the source of their information, or any

[Moore *et al.* v. Tate.]

facts that add strength to their testimony, and evidence of an admission made by one of the parties more than 40 years before. An attorney, who represented several of the heirs on the settlement, testified that the agreement was made and written in accordance with the understanding of the parties. *Held:* That the evidence is insufficient to warrant reformation, and the bill should be dismissed.

APPEAL from the Chancery Court of Lauderdale.
Heard before the Hon. THOMAS COBBS.
The bill in this case was filed by the appellants against the appellees. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.
On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainants were entitled to the relief prayed for, and ordered accordingly. From this decree the present appeal is taken, and the same is here assigned as error.

SIMPSON & JONES, for appellants, cited 1 Brick. Dig., 865, § 866 *et seq.*; *Pollard v. Maddox*, 28 Ala. 321; *Chambers v. Ringstaff*, 69 Ala. 140; 1 Brick. Dig. 639, § 3.

No counsel marked as appearing for appellee.

COLEMAN, J.—This is the second appeal in this case.—102 Ala. 320. The record of the evidence on the former appeal was such that it became necessary to reverse the case, without determining the merits of the controversy. The appellants, as heirs of Hugh McVay, deceased, instituted an action in ejectment in the circuit court to recover two quarter sections of land. The plaintiffs in the ejectment suit claim title under and by virtue of the following provision in a deed of conveyance, executed by Hugh McVay in his lifetime, to Henry W. McVay, to-wit: "to have and to hold the said tract of land to the use and behoof of him, the said Henry W. McVay, for and during the term of his natural life, without impeachment for waste, and from and after the determination of the estate of the said Henry W. McVay, then to the lawfully begotten child or children or lawful issue of said Henry W. McVay, and in case the said Henry W. McVay, should have no child or children or lawful issue, then the reversion of the said tract of land to return to the said Hugh McVay, and his right heirs."

Henry W. McVay died without child or children or lawful issue. The defendants in ejectment, the complainants in the present bill, were purchasers by *mesne* conveyances from Henry W. McVay, the owner of the life estate, according to the provisions of the foregoing deed of conveyance. The complainants, who were the defendants in the ejectment suit, filed the present bill, in which it is averred, that in the settlement of the estate of Hugh McVay, the ancestor of, and from whom the rights of both Henry W. McVay and plaintiffs in the ejectment suit were received, a controversy arose, which was settled by a compromise agreement reduced to writing, in which it was agreed that Henry W. McVay was to have and own the reversionary interest in said lands, and that the written compromise duly executed failed to express the real purpose and intention of the agreement made by the parties. The bill prays for a reformation of the written compromise, and for a perpetual injunction of the suit in ejectment at law. The whole equity of the bill depends upon the right of the complainants to have the agreement reformed, for without this equity, the complainants' rights are purely legal. The rule is, "that where the instrument speaks the true agreement between the parties, equity will not reform it because one or both of them may have mistaken its legal consequences. * * * When the legal effect of the terms agreed upon by the parties to be employed in a written instrument, through a misapprehension or ignorance of their import, results in a contract different from that really entered into by them, the court of equity in the exercise of its moral jurisdiction will reform it." The burden in such cases, always rests upon the complainant to show by evidence that "is clear," "exact," "convincing," "satisfactory," that the written instrument does not truly contain or express the real agreement of the parties.—*Trapp v. Moore*, 21 Ala. 697; *Guilmartin v. Urquhart*, 82 Ala. 570; *Ohlander v. Dexter*, 97 Ala. 476; *Burnell v. Morris*, 106 Ala. 349; *Mitchell v. Capital City Ins. Co.*, 110 Ala. 583. Mr. Pomeroy uses the following language: "The authorities all require that the parol evidence of the mistake and of the alleged modification, must be most clear and convincing, or else the mistake must be admitted by the opposite party; the resulting proof must be established

beyond a reasonable doubt. Courts of equity do not grant the high remedy of reformatton upon a probability, nor even upon a mere preponderance of the evidence, but only upon a certainty of the error."—2 Pomeroy Eq. Juris., § 859. The same degree of proof is declared in Story Equity Juris., (12th ed.), § 157 and note.

It appears that the parties were represented on the settlement by attorneys, and the evidence tends to show —against which there is no controverting evidence— that the agreement of compromise was drawn up by Mr. Irvine, the attorney for Henry W. McVay. We quote so much of the written compromise as seems material: "Whereas difficulties have arisen between Henry W. McVay and the other legatees and heirs of Hugh McVay, deceased, to-wit, [Here follows their names]. And whereas the said Hugh did by deed, executed and delivered to Henry W. McVay (in May, 1847), the following named negroes to-wit, [here the names of thirteen negroes are given], and whereas the said Hugh McVay did also by deed (duly executed) give and grant to the said Henry W. McVay a lifetime estate in the following described lands to-wit, [describing the lands in controversy]. Now for the purposes of settling and quieting all doubts, disputes and contentions in regard to said Henry W. McVay's interest in said Hugh's estate, and setting apart his said interest, all of the above named parties, except Henry W. McVay, in consideration of the premises, and for the consideration hereinafter mentioned * * * hereby relinquish and quitclaim to the said Henry W. McVay now and forever, to all such real estate, title and interest, as the said Henry W. McVay hath and takes in and to the lands and negroes, mentioned in the two deeds of gifts hereinafter referred to by virtue of said deeds. And the said Henry W. McVay, on his part, in consideration of the premises, doth hereby relinquish, give up and quitclaim to all and any further interest in the estate of Hugh McVay, either real or personal, which he hath either as legatee or heir of said Hugh McVay, and he further relinquishes; gives up and doth quitclaim to any reversion and interest, which he hath or may have in or to any property, real or personal, which the said Hugh McVay may heretofore have given for life, either to himself or

[Moore *et al.* v. Tate.]

to the said [naming the other heirs and legatees], and the said Henry W. McVay doth further agree to pay to the other parties seven hundred and fifty dollars,'' &c. The averments of the bill are, that the parties compromised their controversy by agreeing that Henry W. McVay should retain and own the slaves given to him by deed and the life interest in the land, and in addition thereto the others should quitclaim to him their interest in the reversion of the land, and that the written agreement was intended to have this legal effect. If the compromise agreement should be reformed to this effect, the reformation would create an instrument precisely at variance with the one written. To entitle the complainants to this relief, they must establish the mistake and the reformation by a very high degree of proof. There is no question of fraud or overreaching in the case. We must find that the attorney who drew the compromise agreement was not properly informed by the parties, or did not know the real effect of his language, or was so inadvertent as to employ terms, the legal effect of which was contrary to that intended to be expressed, and which the parties ignorantly executed. The parol evidence introduced on the trial was taken more than forty years after the execution of the agreement. All the children of Hugh McVay, who were parties to it, had died. The complainants examined three witnesses, Letsinger, Futrell and Urban. The first two testified that Henry W.. McVay gave his notes for seven hundred and fifty dollars, for the entire interest of his sisters in the land. That Henry W. McVay transferred to his sisters all his interest in his father's estate, and purchased their interest in the lands in controversy. Two of the witnesses testify to admissions of Atlantic Moore, one of the heirs, made by her more than forty years before their testimony was given. This is substantially all the evidence offered by complainants. The admissions of Atlantic Moore could not bind the other parties, and a mere parol admission testified to more than forty years after it was made is entitled to but little weight. Neither of the witnesses pretend to state the source of their information, nor state any facts to add strength to their testimony. Their evidence, if true, evidently narrows the scope of the compromise effected and assented to by all parties. There is no direct proof of the value

of the estate that each legatee or heir received on the settlement of the estate, but there appears enough in the final settlement of the administrator to satisfy us, that Henry W. McVay received from their father under the compromise a much larger interest than either of the others. The testimony of Judge Wood introduced by the respondents is more satisfactory. He says "that he represented several of the parties in the settlement of the estate of Hugh McVay. Was familiar with the facts which led to the execution of Exhibit C. [the compromise agreement]. Henry McVay had received a large number of negroes from his father and a deed to a life estate in the lands in suit. The other heirs wanted him to account for this property as an advancement from his father, and charged the said Henry with overreaching and practicing undue influence over his father. It was ultimately agreed that said Henry McVay should take the negroes and life estate mentioned in the deed and Exhibit C. and relinquish all other interest in the estate, and pay the other heirs $750." This witness states his information and the means of obtaining it. It accords with the written agreement. If the rule was less exacting, under the circumstances we would feel bound to let the written settlement of this family controversy stand.—2 Pom. Eq. Jur., § 850.

A decree will be here rendered reversing the cause, and dismissing complainants' bill.

Reversed and rendered.