(135 So. 161)

**WEST END SAV. BANK v. GOODWIN et al.**

6 Div. 874.

Supreme Court of Alabama.

May 21, 1931.

Rehearing Denied June 11, 1931.

H. L. Anderton, of Birmingham, for appellant.

O. D. Street, A. Leo Oberdorfer, and Wm. S. Pritchard, all of Birmingham, for appellees.

**FOSTER, J.**

The claim made by appellant to the proceeds of the policy on the life of A. W. Bell, dated July 8, 1926, was that he was then the president, a stockholder, and director of appellant bank, and that the directors caused the issuance of said insurance policy with it named as the beneficiary; that it paid all the premiums as they fell due until the death of insured. Dr. Bell, the insured, resigned as president of the bank on February 20, 1928. Thereafter the insurance agent who wrote the policy voluntarily advised the cashier of the bank that the resignation by Dr. Bell as president affected the right of the bank under said policy, and that in his opinion the beneficiary should be changed to the estate of Dr. Bell, and that he should simultaneously assign it to the bank in order to fully protect the original rights of the bank to the full face value of the policy. The agent also thus advised Dr. Bell who expressed the willingness to make any arrangement which the bank and insurance company suggested to secure to it the full benefit of the policy. He did not at any time seek to make the change, but only agreed to the suggestion in the interest of the bank, as he supposed.

The allegation is made that by such statements they were all led mistakenly to believe that, on account of the resignation of Dr. Bell as president, the bank did not further have the right to continue as beneficiary, and to secure the protection which the policy purported to carry. That acting upon such mistaken advice the cashier of the bank (without the knowledge of the directors) and Dr. Bell were led thereby to agree that the change be effected simultaneously as suggested. This was done on September 6, 1928. The assignment to the bank by Dr. Bell stipulated that it was "as far as his [its] interest may appear."

The court had jurisdiction of the subject-matter here involved and the bank sought by cross-bill to have the policy and its assignment reformed for mistake, and to have awarded to it the full amount stipulated in the policy under such rights as were secured by its original terms. The court held that the mistake referred to was one of law, and therefore the bank could not reform the instruments and was only due such amount as its interest may then appear, viz., the amount of the premiums paid by it on the policy and any debt which Dr. Bell might otherwise owe it.

■ Appellee concedes as sound the claim of appellant that when the policy was issued the bank had an insurable interest in the life of Dr. Bell (Englebert v. Verner, 218 Ala. 362, 118 So. 745, 62 A. L. R. 131), and that his resignation did not affect the continued validity of the insurance for the full benefit of the bank, and that, if no change had been made, the bank would be due to receive the proceeds of the insurance. Such is the general rule very well established by the authorities generally. 1 Cooley's Briefs on Ins., 414, et seq.; Connecticut Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251; Wurzburg v. New York Life Ins. Co., 140 Tenn. 59, 203 S. W. 332, L. R. A. 1918E, 566; Keckley v. Coshocton Glass Co., 86 Ohio St. 213, 99 N. E. 299, Ann. Cas. 1913D, 607; Caldwell v. Grand Lodge, 148 Cal. 195, 82 P. 781, 2 L. R. A. (N. S.) 653, 113 Am. St. Rep. 219, 7 Ann. Cas. 356.

■ Equity will reform a contract of insurance under the general rules which extend such relief to other contracts. American-Traders' Nat. Bank v. Henderson, 222 Ala. 426, 133 So. 36; Code, § 6825.

■■ While the rule is well settled that a court will not reform a contract for a mere mistake of law, there has long been recognized to exist a class of cases hard to distinguish from mistakes of law, where "through mistake a written agreement contains substantially more or less than the parties to it intended, or, from ignorance or want of skill in the draftsman, the object and intention as contemplated by the agreement is not expressed in the written instrument by reason of the use of inapt expressions, equity will interpose and reform the agreement." Trapp v. Moore, 21 Ala. 693, 697; Larkins v. Biddle, 21 Ala. 252; Hemphill v. Moody, 64 Ala. 468; Moore v. Tate, 114 Ala. 582, 21

So. 820.; Orr v. Echols, 119 Ala. 345, 24 So. 357; Skidmore v. Stewart, 199 Ala. 566, 75 So. 1; Parra v. Cooper, 213 Ala. 340, 104 So. 827; Ohlander v. Dexter, 97 Ala. 476, 12 So. 51. This rule is further extended in some cases, so that, "when the legal effect of the terms agreed upon by the parties to be employed in a written instrument, through a misapprehension or ignorance of their import, results in a contract different from that really entered into by them, the court of equity, in the exercise of its moral jurisdiction, will reform it." Moore v. Tate, supra; Orr v. Echols, supra; Waller v. Mastin, 220 Ala. 479, 125 So. 806; Stone v. Hale, 17 Ala. 557, 52 Am. Dec. 185; 34 Cyc. 914.

But the broad language of the last foregoing statement is somewhat restricted in other cases. It is said that, "when a written instrument is, in its terms, clear and unambiguous * * * in the absence of fraud,. or of mistake of fact, a court of equity can not take jurisdiction to reform it, because the parties, or either of them, may not have apprehended its legal effect." Kelly v. Turner, 74 Ala. 513, 518. It is there suggested that, for the rule to apply, some ambiguous term, or inapt expression, must be used or some term omitted, by which the intention of all parties was not clearly shown.

The authorities have permitted a reformation in cases where the distinction between a mistake of law and fact is not clearly and fully observed.

Viewing the claim of the bank from another aspect, we note, in this connection, that a mere beneficiary, in a policy which contains a provision for a change in that respect by the insured, has only an expectancy, but no vested right. But the insured may assign the policy to the named beneficiary, and thereby vest in him an irrevocable right to all its benefits. McDonald v. McDonald, 212 Ala. 137, 141, 102 So. 38, 36 A. L. R. 761. And if the original beneficiary is named pursuant to an agreement, express or implied, upon a valid consideration moving from him, in the absence of a statute to the contrary, he acquires an equitable interest which cannot be defeated without his consent, notwithstanding the defeasible interest of a mere beneficiary. Summers v. Summers, 218 Ala. 420, 118 So. 912.

Under such circumstances, that interest is more than merely to secure a repayment of the consideration advanced. Under a mistaken idea of what was necessary to secure to the bank the full benefits of the policy, and under the advice of the insurance agent doubtless acting in good faith, and by the consent of all parties to accomplish that purpose, the change was made in the beneficiary and an assignment to the bank as its interest may appear. That interest not being stated in the assignment was subject to proof, otherwise. It is alleged that this was to the extent of the full benefits under the policy, and not merely to secure a debt. By virtue of a right vested at the inception of the transaction in consideration of the payment of the premiums by the bank then having an insurable interest, such substituted agreement as alleged in the cross-bill did not serve to lessen or change that interest. The cross-bill in effect negatives an intent to do so.

We are inclined to the view that relief to cross-complainant need not necessarily be secured by a reformation. But that the facts alleged show that the interest is to the extent of the full benefit of the proceeds of the insurance secured by agreement upon a valuable consideration. But that, if it were otherwise concluded, the language used in the assignment is of the nature of an inapt or ambiguous expression of what was intended, and of such sort as would justify a reformation, if necessary, to accomplish the agreed purpose of the parties. So that we think the cross-bill shows a right in the bank which the court should protect, and that it was not subject to the demurrer interposed to that aspect which claimed the full benefits of the policy.

The decree is therefore reversed, and one here rendered overruling the demurrer.

Reversed, rendered, and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.