12 So.2d 82

### CITY OF ONEONTA v. SAWYER.

6 Div. 102.

Supreme Court of Alabama.

Feb. 18, 1943.

P. A. Nash, of Oneonta, for appellant.

R. G. Kelton, of Oneonta, for appellee.

**BOULDIN, Justice.**

The City of Oneonta filed a bill for the reformation of a deed executed by the City to appellee, R. L. Sawyer. The trial court, on submission for final decree on pleadings and proof, denied relief and dismissed the bill.

Code of 1940, Title 47, § 136, reads: "When, through fraud, or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a deed, mortgage, or other conveyance does not truly express the intention of the parties, it may be revised by a court of equity on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value."

Another statute deals in like terms with the reformation of written contracts. Title 9, § 59.

■ These statutes enact into statutory law, in general terms, the law of reformation of instruments long existent. One principle, embodied in these general terms, and particularly applicable to the case before us, is thus stated: "* * * where 'through mistake a written agreement contains substantially more or less than the parties to it intended, or, from ignorance or want of skill in the draftsman, the object and intention as contemplated by the agreement is not expressed in the written instrument by reason of the use of inapt expressions, equity will interpose and reform the agreement.' Trapp v. Moore, 21 Ala. 693, 697; Larkins v. Biddle, 21 Ala. 252; Hemphill v. Moody, 64 Ala. 468; Moore v. Tate, 114 Ala. 582, 21 So. 820; Orr v. Echols, 119 Ala. [340], 345, 24 So. 357; Skidmore v. Stewart, 199 Ala. 566, 75 So. 1; Parra v. Cooper, 213 Ala. 340, 104 So. 827; Ohlander v. Dexter, 97 Ala. 476, 12 So. 51." West End Savings Bank v. Goodwin, 223 Ala. 185, 187, 188, 135 So. 161, 162.

■ The reformation here sought is in matter of description of the lot or parcel of land. The grantee paid for and was put into possession of the lot admittedly intended. The grantee, over objections of the grantor, extended his possession to other adjoining lands claimed by him to have been purchased, and claimed to be covered by his deed. In such case, reformation may be had on proper averment and proof even though the deed be so defective in matter of description as to be void and inadmissible in a court of law. Greene v. Dickson, 119 Ala. 346, 24 So. 422, 72 Am.St.Rep. 920.

The land actually sold by mutual agreement of parties, as contended by complainant, is described in the bill as amended as follows: "A certain plot or lot of land located on the Southwest side of the New State Highway and East of First Avenue, in the City of Oneonta, Alabama, bounded as follows: On the Northwest side by Mrs. R. A. Ingram property; on the Northeast side by the New State Highway, (From Huntsville to Montgomery, Alabama); On the Southeast side by the property of the Blount County High School and the ditch that runs along the South side of Gordon's Warehouse property; and on the West by Gordon's Warehouse property, all lying and being in Section 31, Township 12, Range 2 East, in the City of Oneonta, Blount County, Alabama."

This description, as disclosed by undisputed evidence, covers a small lot in the form of an irregular quadrangle. No one took the pains to take the measurements of this lot, but by estimate it fronts eastward

or southeastward on the State highway some 125 feet, and runs back westward, on the north side of the drain ditch some 140 feet, narrowing to some 60 feet at west end, adjoining the Gordon Warehouse property. The deed sought to be reformed, prepared by the city clerk and executed by the mayor, contains the following description:

"A certain plot or lot of land located on the Southwest side of the New State Highway and East of First Avenue, in the City of Oneonta, Alabama, bounded as follows: On the Northwest side by Mrs. R. A. Ingram property; on the Northeast side by the New State Highway (from Huntsville to Montgomery, Alabama); on the Southwest side by property of the Oneonta Cotton Warehouse Company, and on the Southeast side by property of the Blount County High School and the above mentioned highway. No guarantee is given or guaranteed herein as to the exact size of dimensions of this lot; but all of the property of said City, contained in the above described boundaries is hereby conveyed. All lying and being in Section 31, Township 12, Range 2 East, in the City of Oneonta, Alabama."

On receipt of this deed respondent claimed title to, caused to be surveyed, and enclosed not only the lot north of the ditch, but adjoining lands of the city running southward or southwestward, lying between the highway on the east and the county high school property on the west. The survey included part of the high· school stadium. Respondent promptly tendered a deed to the State conveying the portion within the stadium grounds.

Again the parties have not taken the measurement of the land thus claimed and enclosed. Estimates run from four to seven acres, and estimates of value from $500 to $1,500. Respondent puts the area at three to three and one-half acres, and value at $100 per acre. Admittedly he paid $75 for the land actually purchased.

The resolution of the City Council authorizing the sale and conveyance reads:

"Moved by L. S. Hendrix, seconded by L. H. Brown, that the Mayor and Clerk be authorized to deed small lot behind Gordon's Warehouse to R. L. Sawyer, for and at the sum of $75.00, by Quit Claim Deed. On vote, motion carried."

The mayor and all five members of the Council were present. The deed was prepared by W. J. Nash, City Clerk, signed and acknowledged by the mayor before said Nash, as a notary public, on the same day of the resolution.

Without dispute all prior negotiations related solely to the lot north of the ditch, the lot behind the warehouse. The only controversy in this regard is: The city authorities claim respondent had offered $50 for the small lot, which had been refused by the Council, and respondent later raised his offer to $75, which was accepted as per the resolution above. Respondent claims the city had offered to sell him the small lot for $50, which he had declined. He testified:

"Well,. on Friday before that deed was made on a Monday W. J. Nash called me up and asked me what I would give them for what property they had the other side of that road over there and I said $75.00. He said 'Well, you bought yourself some property.' I says 'Make me a deed.' "

"Q. After that did you have a conversation with Mr. Nash in reference to that deed? A. Nobody at all. He called me Monday morning or Tuesday one between 10 and 11 o'clock and told me to bring my check and come get the deed."

Without a detailed recital of the evidence, we find the great weight of the evidence is opposed to this contention of respondent. Certain it is the city clerk had no authority to offer other lands than the small lot for $75; clearly the governing body of the city never contemplated a sale of other than the small lot indicated in the resolution, nor authorized any deed to other property. The description in the deed, as written and delivered, is ambiguous, rather conflicting in its calls, and out of keeping with the actual lay of the land taken into possession by respondent as disclosed by the evidence, including the map or plat offered by respondent and copied in the record.

To illustrate: The deed bounds the property on southwest side by the warehouse property, and on southeast·side by the high school property, when in fact these properties are both on the same side of the property enclosed by respondent, the warehouse property at the north end and the school property along the extended stretch southward. Again, by the deed, the property is bounded on the northeast side by the new State highway, and on the southeast by the school property and said highway. In truth the school property and the highway are on opposite sides of the main body of acreage taken into possession.

Without further comment, we are fully convinced it was mutually agreed and intended that the property sold by the city and purchased by the respondent was the small lot behind the warehouse property, the lot bounded on the south by the ditch; the property sufficiently described in the bill as amended.

On careful consideration we find these facts fully and clearly established by that measure of proof required in such cases. The evidence was by depositions, not on oral examination before the court. No misdescription in the draft of the deed, through inadvertence or otherwise on the part of the clerk, nor negligence of the mayor in failing to scrutinize the description, can serve to defeat the right of the city to reform the deed and reclaim possession of its property. No negligence or other dereliction on the part of the governing body of the city is shown. Under what conditions the city would be cut off by the negligence of the city council we need not consider.

The decree of the court below is reversed and vacated, and a decree here rendered correcting the description of the property as prayed and remanding the cause, with directions to enter proper orders and decrees for the execution of a deed with descriptions as corrected, for noting the reformation of the deed upon the record thereof, and for the restoration of the possession of the remaining land to complainant.

Let respondent (appellee) be taxed with the costs of suit in the court below, and the costs of appeal in this court and the court below.

Reversed, rendered and remanded.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.