145 So.2d 811

### FIDELITY SERVICE INSURANCE COMPANY

v.

### A. B. LEGG & SONS BURIAL INSURANCE COMPANY, Inc.

### 6 Div. 840.

Supreme Court of Alabama.

Oct. 18, 1962.

Fite & Fite, Jasper, for appellees.

Tweedy & Beech, Jasper, for appellant.

HARWOOD, Justice.

Originally the appellant here had filed a suit against the appellees claiming $5,000.00 damages for breach of warranty in a deed by which the appellee had conveyed certain lands to the appellant. After delivery of the deed, the appellant resold a portion of the land described in the deed and subsequently was forced to repurchase the land that he had conveyed because of a defect in the title to the portion thereof.

Upon the filing of the suit for breach of warranty by the appellant, the appellee moved to transfer the cause to equity, which motion was granted.

In equity, the appellant filed a bill setting forth that in the transactions which led to the execution of the deed referred to in the breach of warranty suit, the negotiations were handled by the agents or officers of the appellant, and by the agents or officers of the appellee; that in these negotiations the officers or agents of the appellant were fully informed by the agents of the appellee that certain of the lands under consideration had been previously conveyed to the Alabama Power Company; that the appellee did not sell the land described in the breach of warranty suit to the appellant and that the appellant did not buy such land; that the deed given the appellant should not have included the land described in the breach of warranty suit and if such land was included in the deed it was erroneously included due to a mutual mistake of the parties; that the appellee did not know at the time the deed was executed that the said land was included, but relied upon C. G. Harper, who wrote the deed, to omit therefrom the said land, C. G. Harper having been instructed by the appellee to omit said land; that the appellee relied upon the said Harper writing the deed according to such instructions and the appellee did not know the land was included therein at the time the deed was executed; that the appellee did not sell to the appellant the land described in the breach of warranty suit and the appellant did not pay the appellee for said land; that in executing the deed referred to in the breach of warranty suit the appellee relied upon said Harper to so write the deed as to comply with the agreement and understanding of the parties and the instructions of the appellee.

In the hearing on the bill the testimony was taken ore tenus before the court.

Mr. W. L. Legg and Mr. Joe Legg, officers of the A. B. Legg & Sons Burial Insurance Company, Inc., testified for the appellee, and Mr. Brooks Glass and Mr. Billy Graham, officers of the Fidelity Service Insurance Company, were the witnesses for the appellant.

The evidence presented by the Leggs was to the effect that several conferences were held between A. B. Legg, Jr., who was deceased at the time of the trial, W. L. Legg, and Joe Legg, representing the Legg Company, and Mr. Brooks Glass and Mr. Billy Graham, officers of Fidelity, concerning the land transfer. Each of the Leggs testified that Mr. Glass and Mr. Graham were told specifically that, of the 160 acres involved in this suit, a portion thereof which came up to 510 feet mean sea level had been sold to the Alabama Power Company with an easement to flood up to 522 feet mean sea level. The Leggs testified that a map was shown to Glass and Graham which indicated in color the area to be flooded, and that this area amounted to 114 acres and said 114 acres could not be conveyed by the Leggs because of the previous sale thereof to the Alabama Power Company; that comment was made that the remaining part of the 160 acres would be a valuable asset as lake front property; that when Mr. Graham commented he did not fully understand the transaction, the details were explained fully the second time and both Mr. Glass and Mr. Graham stated they then

understood that the 114 acres would not be a part of the trade.

In this discussion it was also agreed that an area on which is located Natural Bridge, and 10 acres at a highway intersection leading to Natural Bridge, was to be excluded from the deed.

All witnesses testifying below agreed that the Natural Bridge area and the 10 acres at the highway intersection were to be excluded.

The deed was prepared by Mr. C. G. Harper, a retired employee of the Legg Company, who continued to come to the Legg office virtually every day. Mr. Joe Legg instructed Mr. Harper as to the contents of the deed and testified that he specifically instructed Mr. Harper to omit from the deed that portion of the property that had been sold to the Alabama Power Company, the Natural Bridge area, and the highway intersection acres.

After the deed had been prepared, Mr. A. B. Legg, Jr., deceased at the time of the trial, delivered the deed to Fidelity's office in Birmingham. Prior to delivery, the Leggs checked the deed to assure themselves that the Natural Bridge lands had been omitted from the description, but they did not check the exclusion of the land sold to the Power Company.

The Fidelity agents had no part in the preparation of the deed and did not see it until it was delivered.

Upon delivery of the deed, Mr. Legg also presented the deeds conveying the land to the Legg Company and also abstract of title, though the abstracts were not up-to-date.

For the appellant, Mr. Glass and Mr. Graham testified that the lands in the deed delivered to them were checked against the deeds of conveyance to the Legg Company and everything was in order.

They further testified that at the time of delivery of the deed to them they were informed by Mr. Legg that an additional 40 acres in Franklin County that had previously been discussed was excluded from the deed because the Leggs had found they did not own it. No mention was made at this time of the exclusion of the 114 acres involved in this suit.

Both Mr. Glass and Mr. Graham testified that there had never been any discussion with the Legg brothers relative to the exclusion of any property previously sold to the Alabama Power Company and that the only exclusions mentioned in their conferences were limited to the Natural Bridge property and the 10 acres at the highway intersection; and later upon the delivery of the deed the omission of the 40 acres in Franklin County. They each also denied that any map was ever produced or shown in any of their conferences.

Testimony was also offered by Fidelity through its witnesses that the basis for the whole land transaction was a statement of assets and liabilities of the Legg Company of December 31, 1957, filed with the State Superintendent of Insurance. This statement shows a book value of the property of the Legg Company in Winston County as $17,200.00, at a value of $10.00 per acre. It is further shown that the deed recites a conveyance of 1,720 acres in Winston County of which the 160 acres involved in this suit was a part.

In rebuttal to this testimony the witnesses for the appellee, the Legg Company, testified that the statement of assets of December 31, 1957, was discussed but was not in itself the basis for the transaction in that there was a gentlemen's agreement that the Legg Company was to transfer all of its bonds to the Fidelity Company; that the statement recites $69,000.00 in bonds when in fact the Leggs delivered an additional $5,000.00 in bonds. To this appellant's witnesses testified that the total amount of bonds received by Fidelity was $69,000.00, the amount shown in the statement.

Upon the conclusion of the hearing the court entered a decree to the effect that the deed in question be reformed and corrected

by striking therefrom the land previously conveyed to the Alabama Power Company, and that no title to said previously conveyed land passed or vested by the deed by which appellant purportedly conveyed said land.

The court also filed an opinion with its decree in which it set forth:

"The evidence in this case is in direct conflict. The only witnesses testifying were agents for the two Corporations. The Court finds it necessary to look to all the circumstances and conditions surrounding the agreement between the parties, considering also the amount of property involved, in order to reach a decision in this case.

"The Court is fully aware that the authorities held that the proof must be clear and convincing that the conveyance does not truly express the intent of the parties, and in the case, that there was a mistake made in the preparation of the deed to the Respondent. The Court has reached the conclusion that there was a mistake made in the preparation of the deed, after a consideration of all the facts and circumstances in the case. It is the opinion of the Court that the fact that the individual preparing the deed was acting under the direction of the agents of the Complainant does not necessarily defeat the right of the Complainant to have the deed corrected.

"Without citing authorities, the Court calls attention to Section 136 of Title 47, and Section 59 of Title 9 of the Code, and to the cases cited in the Alabama Digest under Reformation of Instruments."

From the decree of the court, and its order overruling a motion to set the same aside, this appeal was perfected.

By its assignments of error argued in briefs of counsel for appellant three points for decision have been raised for review, which points will be decisive of this appeal. The points are:

1. The sufficiency of the complaint filed after transfer of the cause to the equity side of the court.

2. Whether a mistake was shown justifying a reformation of the deed under the provisions of Title 9, Section 59, Code of Alabama 1940, and Section 136, Title 47, Code of Alabama 1940.

3. Whether the evidence sufficed to the degree required to support the decree of the lower court.

We will write to these points in their numerical order.

1. In Eastis v. Beasley, 214 Ala. 651, 108 So. 763, the court held that a bill alleging that through error and inadvertence the property was described as in "range 3 west" instead of "range 2 west," was a sufficient allegation of mutuality of mistake in the description of the deed.

In Gilmore v. Sexton, 254 Ala. 560, 49 So. 2d 157, the court considered the sufficiency of a bill substantially similar to the present one. After an extensive review of the authorities, the court held the bill sufficient in the aspect charging a mutual mistake of the parties in describing the lands intended to be conveyed, and that the bill stated a case for reformation of the deed.

Under the above authorities, and the cases cited and discussed therein, it is our conclusion that the court properly overruled the demurrer to the bill in its aspect of stating a mutual mistake in the description of the land intended by the parties to be conveyed.

2. Counsel for appellant argues that the evidence shows only a unilateral mistake, rather than a mutual mistake and therefore no reformation of the deed could be had under the provisions of Section 59, Title 9, and Section 136, Title 47, Code of Alabama, 1940.

As stated by Bouldin, J., in City of Oneonta v. Sawyer, 244 Ala. 25, 12 So.2d 82:

"These statutes enact into statutory law, in general terms, the law of reformation of instruments long existent. One principle, embodied in these general terms, and particularly applicable to the case before us, is thus stated: '* * * where "through mistake a written agreement contains substantially more or less than the parties to it intended, or, from ignorance or want of skill in the draftsman, the object and intention as contemplated by the agreement is not expressed in the written instrument by reason of the use of inapt expressions, equity will interpose and reform the agreement." Trapp v. Moore, 21 Ala. 693, 697; Larkins v. Biddle, 21 Ala. 252; Hemphill v. Moody, 64 Ala. 468; Moore v. Tate, 114 Ala. 582, 21 So. 820; Orr v. Echols, 119 Ala. [340], 345, 24 So. 357; Skidmore v. Stewart, 199 Ala. 566, 75 So. 1; Parra v. Cooper, 213 Ala. 340, 104 So. 827; Ohlander v. Dexter, 97 Ala. 476, 12 So. 51.' West End Savings Bank v. Goodwin, 223 Ala. 185, 187, 188, 135 So. 161, 162."

 Counsel stress in their argument the fact that the appellee had the deed prepared by their former employee Mr. Harper, and that the appellant never saw the deed until it was delivered to them by the appellants. Answer to this argument is to be found in the following excerpt from McCaskill v. Toole, 218 Ala. 523, 119 So. 214:

"Where an accord of minds is reached, and the document intended to express such agreement fails so to do by reason of the mistake of the draftsman, it is immaterial who employed him. His mistake was merely the occasion of the parties executing a paper not expressive of their common intent. No matter if one of them is the draftsman, the real concern is: Does it express the agreement of the parties?"

3. We are not unmindful that the rule in causes pertaining to reformation of deeds that the burden on the complainant is to establish his case by clear, convincing and satisfactory evidence. Great Atlantic & Pacific Tea Co. v. Engel Realty Co., 241 Ala. 236, 2 So.2d 425.

The evidence was heard ore tenus in the court below. True, there was an irreconcilable contradiction between the evidence presented by the respective parties. In such event, the finding of the trial judge as the effect of a jury verdict, and every presumption will be indulged in favor of the lower court's decree, and it will not be disturbed unless palpably wrong. Hodges v. Beardsley, 269 Ala. 280, 112 So.2d 482; Harrison v. Harrison, 261 Ala. 648, 75 So.2d 620.

The evidence presented by the appellee was ample in its tendencies to the degree required to support the decree rendered, and it is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.