325 So.2d 151

**Christine Juanita GRAY**

v.

**LINCOLN INDUSTRIAL INSURANCE CO., INC., a corp.**

**SC 1312.**

Supreme Court of Alabama.

Jan. 2, 1976.

George I. Case, Jr., Birmingham, for appellee.

Nichols & Lowery, Birmingham, for appellant.

JONES, Justice.

Purchaser-mortgagor appeals from an order granting declaratory relief to the seller-mortgagee imposing simple interest at the annual rate of 5% on the unpaid balance of the debt evidenced by a note which was executed simultaneously with, and referred to in, a mortgage. As modified by order of this Court in conformity with this opinion, the final decree of the trial Court is affirmed.

The facts are virtually without dispute. In late 1962, Lincoln Industrial Insurance Company (appellee) owned and offered for sale to Christine Juanita Gray (appellant) a house and lot in the Ensley community of Jefferson County. Lincoln's original offer was $12,500 sales price, $1,000 downpayment, and a balance in unspecified monthly payments at an annual interest rate of 8%.

Although a title insurance binder in the amount of $12,500 was ordered, Gray sought the services of an attorney to pursue the negotiations further and to represent her in closing the transaction. When it was pointed out to Lincoln by the attorney that his client could pay only $45 to $50 per month and that this would be inadequate to retire even the interest at 8%, Lincoln agreed to reduce the purchase price to $11,500 (with $1,000 down), the interest rate to 5%, and to accept $50 per month on the balance.

After clearing several deficiencies shown in the title binder, Lincoln's attorney prepared and forwarded the deed, the mortgage, and the note[1] to Gray's attorney who supervised the closing of the transaction, including the preparation of a closing statement, delivery and recordation of the documents.

The deed showed a consideration of $11,500. The mortgage stated the amount of indebtedness as $10,500, payable on the 2nd day of May, 1963, and the 2nd day of each month thereafter at $50 per month with "interest of 5% included". The closing statement reflected the $1,000 down payment and a title policy—consistent with the binder—was issued for $12,500. Payments of $50 per month were regularly and timely made by the purchaser until January, 1970.

On January 9, 1970, Gray's attorney informed Lincoln by letter, "On the 2nd day of April, 1963, you sold Lot 12 in Block A, Unit Land Company's first addition to Ensley to Christine Juanita Gray for the sum of $11,500, which sum of money included interest over the period of payment." The letter then set out the pertinent parts of the note in which the only reference to interest was, "Interest shall be payable on the respective installments at the legal rate per annum after maturity thereof."

After commenting that the note was secured by a mortgage, the letter concluded: "According to my figures, I am enclosing, herewith, a check for $50 to pay for January, 1970. This will be 115 payments. This amounts to $5,850 paid which leaves a balance of $4,650." The controversy brought to light by this letter ultimately culminated in this litigation.[2]

1. All of these legal documents were the traditional printed forms with blanks to be filled in to fit the particular facts of the situation. The note was what is sometimes referred to as a bank "long form" note.

2. For the purpose of clarity, it should be noted that monthly payments continued through September, 1973; that no issue of waiver or estoppel is raised with respect to Lincoln's receipt thereof; and that default is not

The posture of the record before us is somewhat confusing because plaintiff's bill for declaratory judgment sought relief on one theory (reformation); the defendant chose to defend on a different theory (consistency of the note and mortgage providing interest only after maturity); and the trial Court's decree granting plaintiff relief is founded on a third theory (patent ambiguity admitting of parol evidence to discern true intent of the parties). Thus, a brief review of the respective contentions of the parties and the basis for the trial Court's final decree is necessary to place in perspective the issue presented for our review.

Lincoln, through its attorney, both by its pleadings and proof, says the parties through their negotiations arrived at a mutual assent for the sale and purchase of the real property in question. The mortgage, though not a model of perspicuity, accurately and adequately express the meeting of the minds. The sales price of $11,500 was reduced by a $1,000 down payment to $10,500, which balance was to be paid at the annual interest rate of 5% with both the principal and interest included in the $50 per month payments. The note, through mutual mistake or scrivener's error, omitted any reference to interest except the reference contained in the printed form which refers to interest at the legal rate from the date of maturity. The plaintiff's pleading (bill for declaratory judgment), both as to averments of fact and prayer for relief, and its uncontradicted evidence support reformation of the note to express the contract mutually agreed upon by the parties.

Gray, through her attorney, offered a defense totally foreign to the reformation theory. Consistent with the position taken in her attorney's letter to Lincoln dated January 9, 1970, she contended that the

words employed by the mortgage, "with interest of 5% included," rendered the note's omission of any reference to interest (except from maturity) correct, because the mortgage indebtedness of $10,500 included the 5% interest.

Appellant's argument is fallacious, both legally and factually: factually, because $10,500, by all the evidence—oral and documentary—represented the principal balance of the debt; and legally, because the word "included", as here used, can only refer to the $50 per month payments rather than to the $10,500 amount of the debt. No evidence was adduced by the purchaser to refute either of these conclusions.

That the trial Judge viewed the dispositive issue as controlled by yet a third legal theory can be seen at the very outset of the trial, when he observed:

"I have looked at the note straight from the mortgage, and the language may be said to be ambiguous, and if it is ambiguous, it devolves upon the Court to try to determine what the intentions were, and the only way we can do that is to take testimony."

The ambiguity theory, pursued by the Court throughout the trial, culminated in its decree:

". . . There is a patent ambiguity in a portion of the writing in a mortgage and mortgage note . . . The ambiguity concerns the amount of interest as provided in the mortgage and in the mortgage note. Under the laws of the State of Alabama the mortgage is given to secure the note. The language employed in the note where it is ambiguous has primacy over that language employed for the same purpose in the mortgage. Under the statute, relative to interest which may be charged where the

claimed for nonpayment from September, 1973, to the date of the filing of suit in March, 1974, there being an agreement between the

parties with respect to the payments due from October, 1973, to the date of the resolution of this litigation.

'legal rate' is employed (as in the note), the plaintiff would be entitled to interest at 6%. However, plaintiff does not insist upon any rate of interest in excess of 5%.

"Under the language in both instruments when considered in pari materia, interest is due to be charged and credited to each monthly payment, is included in said payment and may be deducted, and the balance after deduction of interest credited to the principal balance due."

We are appreciative of the enigma faced by the appellant by this anomalous turn of events. Indeed, the grounds included in her motion for a new trial give expression to her dilemma. If this is a patent ambiguity case, then was not all the extrinsic evidence considered by the Court erroneously admitted? *Garrow v. Toxey*, 188 Ala. 572, 66 So. 443 (1914). If the ambiguity is to be devolved from the four corners of the documents, with the language of the note given primacy over the mortgage, how then could "interest . . . at the legal rate per annum after maturity thereof" result in any addition of interest prior to the maturity date of each payment?

Our ability to appreciate the problem, however, does not result in our reversal of the decree below. This is not an "ambiguity" case. The pleadings and the uncontradicted evidence support plaintiff's reformation theory.

■ The power of Alabama courts to reform written instruments extends to promissory notes. *Copeland v. Keller*, 221 Ala. 533, 129 So. 571 (1930). This Court will assume jurisdiction to reform written instruments on the ground of mutual mistake where there has been a meeting of the minds in an agreement actually entered into, but the instrument in its written form does not express the parties' intentions. *Ballentine v. Bradley*, 236 Ala. 326, 182 So. 399 (1938). In such a case, it is immaterial which party employed the draftsman. *Fidelity Service Insurance Co. v. A. B.* *Legg & Sons Burial Insurance Co.*, 274 Ala. 94, 145 So.2d 811 (1962); *McCaskill v. Toole*, 218 Ala. 523, 119 So. 214 (1928).

■ In the instant case, there is substantial and uncontradicted evidence that prior to the execution of the mortgage and note the parties had agreed to an $11,500 purchase price, a $1,000 down payment, and a 5% per annum rate of interest, but the draftsman of the note failed to fill in the interest provision. The appellant does not contend negligence on the part of the appellee. This situation falls squarely within our rule allowing reformation of written instruments where there has been a draftsman's mistake. *Ballentine v. Bradley*, supra. This case must be distinguished from *Brown v. First National Bank of Montgomery*, 261 Ala. 565, 75 So. 2d 141 (1954), where this Court sought to construe the intention of the parties from the face of the executed instruments. In *Brown*, this Court stated that when a note and a mortgage contain conflicting and irreconcilable provisions as to the character or terms of the debt, or the time for its payment, the note will govern as being the obligation. The *Brown* case, however, did not involve a complaint for reformation; rather, it involved an attempt to determine whether the statute of limitations of certain promissory notes began to run from the date of execution or the date of maturity. The *Brown* Court faced a construction problem in which the intent of the parties was not clear.

The case at hand presents a different problem. Here, the actual agreement between the parties is established by overwhelming evidence, but the promissory note, through a draftsman's error, does not express that agreement. The rule set out in *Brown* did not arise to govern the draftsman's error/reformation problem; therefore, it is not applicable to this case.

We hold that Lincoln is entitled to the relief prayed for. Accordingly, an order will be entered reforming the note to in-

clude the words: "with interest to be included in the $50 per month payments."

Modified, affirmed, and rendered.

HEFLIN, C. J., and MERRILL, MADDOX, and SHORES, JJ., concur.